STATE OF NORTH CAROLINA v. RICKY SYLVESTER GRAHAM

No. COA09-135

(Filed 6 October 2009)

**1. Evidence— prior crimes or bad acts—assaults—admissible**

Evidence of defendant's prior assaults against the victim was probative of defendant's motive, malice, hatred, ill-will, and intent, and was admissible.

**2. Evidence— prior crimes or bad acts—assault—probative and not prejudicial**

There was no abuse of discretion in admitting evidence of a prior assault against the victim in a first-degree murder prosecution. The prior assault was highly probative and the evidence against defendant was overwhelming.

**3. Criminal Law— lost evidence—motion for sanctions**

There was no abuse of discretion in the trial court denying a first-degree murder defendant's motion for sanctions after the State lost defendant's impounded car, and in allowing the State to admit evidence about soil taken from the car. There was no show-

ing of bad faith, defendant had access to the soil samples, he presented evidence from his own expert, and he was able to tell the jury that the police department had lost his car.

**4. Criminal Law— prosecutor's arguments—not a comment on failure to testify**

The trial court did not err in a first-degree murder prosecution by not intervening *ex mero motu* to exclude comments by the prosecutor during closing arguments which defendant contended referred to his failure to testify. The remarks were permissible comments on defendant's failure to produce witnesses or evidence to contradict the State's evidence.

**5. Constitutional Law— effective assistance of counsel— delay in indictment and appointing counsel**

Defendant's ineffective assistance of counsel argument was better addressed as a claim of prejudice from pre-indictment delay where he argued that delaying indictment prevented the appointment of counsel which led to hardship in preparing his defense.

**6. Constitutional Law— effective assistance of counsel— speedy trial motion**

There was no effective assistance of counsel violation where defendant argued that his counsel's failure to make a speedy trial motion was deficient performance, but defendant was represented by counsel when his *pro se* motions to dismiss were heard. Defendant has not shown that counsel's failure to move for dismissal on speedy trial grounds was prejudicial.

**7. Constitutional Law— due process—pre-indictment delay— prejudice—allegation not specific**

Defendant did not show a violation of his due process rights from a pre-indictment delay where he asserted only that the length of the delay in indicting him created a reasonable possibility of prejudice.

**8. Appeal and Error— preservation of issues—briefs—failure to set out authority or argument**

An issue concerning the standard of review for pre-indictment delay claims was not properly before the appellate court where defendant failed to set out authority or argument on the issue.

Appeal by defendant from judgments entered 5 October 2007 by Judge Nathaniel J. Poovey in Mecklenburg County Superior Court. Heard in the Court of Appeals 14 September 2009.

*Attorney General Roy Cooper, by Special Deputy Attorney General Jonathan Babb, for the State.*

*Michael E. Casterline for defendant.*

BRYANT, Judge.

On 10 March 2003, defendant Ricky Sylvester Graham was indicted on two counts of first-degree murder. Following superseding indictments issued on 19 February 2007, defendant was tried capitally at the 27 September 2007 session of the Mecklenburg County Superior Court. The jury found defendant guilty on both counts on the bases of felony murder and of malice, premeditation and deliberation. After a capital sentencing proceeding, defendant was sentenced to two consecutive terms of life imprisonment without the possibility of parole. Defendant appeals. As discussed below, we find no error.

*Facts*

At trial, the evidence tended to show the following. Defendant was the estranged husband of victim Tracy Coleman and the father of victim Rishea Graham. Defendant assaulted Coleman in her home on 5 June 1995 and was later indicted for assault with a deadly weapon with intent to kill inflicting serious injury. Thereafter, defendant was overheard threatening Coleman and urging her to leave the state so she could not testify against him. Defendant also asked a friend who worked as a domestic violence investigator with the police department whether an assault case could go forward if the victim was unavailable to testify. On 20 May 1996, shortly before the assault trial was to begin, Coleman and Rishea went missing. On that day, defendant was seen by one witness carrying a shovel and bucket near a lake off Whippoorwill Drive. On 31 May 1996, the bodies of Coleman and Rishea were discovered buried near the lake off Whippoorwill Drive. In June 1996, defendant was convicted of assaulting Coleman and sentenced to 108-139 months in prison.

Murder charges were first filed against defendant in August 2001. The initial charges were dismissed and defendant was not re-indicted until March 2003. In July 2004, defendant filed two *pro se* "Motion[s] for Quick and Speedy Trial/Motion[s] for Progress of My Attorney"

with the senior resident superior court judge. In August 2004, he filed a *pro se* "Request for Trial of [C]onfined [D]efendant." At a September 2004 hearing, defendant's counsel indicated that they would not be ready for trial until late 2005 and defendant asked that they be replaced. The court removed original counsel and appointed two new attorneys to represent defendant in October 2004. In January 2005, defendant filed an "Order to Dismiss With Prejudice for Denial of a Speedy Trial" for which the court held a hearing in April 2005. The court denied defendant's *de facto* motion for a speedy trial, focusing on the two-year delay since the indictment and concluding that although there had been a delay in bringing the case to trial, it was not the fault of the State and that defendant's ability to present his defense had not been impaired. The court did not specifically address the pre-indictment delay. Defendant's trial began two years later in 2007, some eleven years after the crimes took place.

---

Defendant made thirty-seven assignments of error, five of which he brings forward in four arguments to this Court: the trial court erred (I) by admitting Rule 404(b) evidence of the 1995 assault on Tracy Coleman; (II) by allowing testimony about defendant's car which was lost by the State before trial; (III) by failing to intervene *ex mero motu* after certain comments by the prosecutor at closing; and (IV) in not dismissing the case because the long delay in indicting him and bringing the case to trial prejudiced his right to effective assistance of counsel and to prepare a defense.

*I*

**[1]** Defendant first argues that the trial court's decision to admit Rule 404(b) evidence about defendant's 1995 assault on Coleman unfairly prejudiced him in violation of Rule 403. We disagree.

"Whether to exclude evidence under Rule 403 is a matter left to the sound discretion of the trial court." *State v. Coffey*, 326 N.C. 268, 281, 389 S.E.2d 48, 56 (1990) (citations omitted). An abuse of discretion is shown where the court's ruling is "manifestly unsupported by reason." *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985). "Evidence which is probative of the State's case necessarily will have a prejudicial effect upon the defendant; the question is one of degree." *Coffey*, 326 N.C. at 281, 389 S.E.2d at 56. In the context of showing an abuse of discretion by the trial court in its Rule 403 ruling, a defendant must demonstrate a reasonable possibility that, but for the admission of this evidence, the jury would have reached a dif-

ferent result. *State v. Hennis*, 323 N.C. 279, 287, 372 S.E.2d 523, 528 (1988). Thus, we will reverse only upon a clear showing that the trial court abused its discretion in admitting this evidence and that the admitted evidence prejudiced defendant.

The trial court admitted evidence of the 1995 assault under Rule of Evidence 404(b), which provides in pertinent part

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C. Gen. Stat. 8C-1, Rule 404(b) (2007). Rule 404(b) "is a clear general rule of *inclusion* of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but *one exception* requiring its exclusion if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." *Coffey*, 326 N.C. at 278-79, 389 S.E.2d at 54 (emphasis in original).

"[E]vidence of a defendant's prior assaults on the victim for whose murder the defendant is being tried is admissible for the purpose of showing malice, premeditation, deliberation, intent or ill will against the victim under N.C.G.S. § 8C-1, Rule 404(b)." *State v. Gary*, 348 N.C. 510, 520, 501 S.E.2d 57, 64 (1998) (citation omitted). In addition, where one of the State's theories is that the victim was killed to prevent his testifying against defendant on a prior offense, evidence of the prior crime is admissible to prove motive. *State v. Adcox*, 303 N.C. 133, 138-39, 277 S.E.2d 398, 401-02 (1981). Here, the trial court admitted evidence of the 1995 assault for the purposes of showing motive, malice, hatred, ill-will and intent. As discussed above, this evidence had probative value for all of these purposes and was properly admissible.

**[2]** Defendant contends that the evidence admitted was of limited probative value which was outweighed by the high likelihood of unfair prejudice to him. After a careful review of the record, we see no abuse of discretion. In the cases cited by defendant where appellate courts have found prejudicial error under Rule 403, the admitted evidence was of little or no probative value. *See Hennis*, 323 N.C. at 286, 372 S.E.2d at 527-28 (finding an abuse of discretion where admit-

ted crime scene and autopsy photos had no probative value); *State v. Jones*, 322 N.C. 585, 590, 369 S.E.2d 822, 825 (1988) (finding an abuse of discretion where the "probative impact has been so attenuated by time that it has become little more than character evidence illustrating the predisposition of the accused"); *State v. Kimbrell*, 320 N.C. 762, 767-69, 360 S.E.2d 691, 694-95 (1987) (finding an abuse of discretion where the State was permitted to question a witness about devil worship by defendant unrelated to the crime charged). Here, in contrast, the evidence of the 1995 assault was highly probative. Further, the evidence against defendant was overwhelming: he tried to persuade Coleman to go to Hawaii before the assault trial; he was heard yelling at Coleman that "he would kill her first" before she could testify against him; he was placed at the scene where the bodies were recovered by an eyewitness; he possessed a weapon of the type used in the murders; and he gave conflicting accounts of his whereabouts around the time of the murders. We conclude there was not a reasonable possibility that, but for the admission of this evidence, the jury would have reached a different result. These assignments error are overruled.

## II

**[3]** Defendant next argues that the trial court erred in allowing testimony about his car when it was lost before trial. We disagree.

"While the trial court has the authority to impose discovery violation sanctions, it is not required to do so. Therefore, whether sanctions are imposed is within the sound discretion of the trial court and will not be reversed absent an abuse of discretion." *State v. Moore*, 152 N.C. App. 156, 161, 566 S.E.2d 713, 716 (2002) (citations omitted). "[The] discretionary rulings of the trial court will not be disturbed on the issue of failure to make discovery absent a showing of bad faith by the state in its noncompliance with the discovery requirements." *State v. McClintick*, 315 N.C. 649, 662, 340 S.E.2d 41, 49 (1986). " '[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.' " *State v. Mlo*, 335 N.C. 353, 373, 440 S.E.2d 98, 108 (quoting *Arizona v. Youngblood*, 488 U.S. 51, 58, 102 L. Ed. 2d 281, 289 (1988), *reh'g denied*, 488 U.S. 1051, 102 L. Ed. 2d 1007 (1989)), *cert. denied*, 512 U.S. 1224, 129 L. Ed. 2d 841 (1994).

In *Mlo*, we addressed a defendant's contention that his rights to due process under the Fourteenth Amendment to the United States

Constitution and Article I, Sections 19 and 23 of the North Carolina Constitution were violated when the State improperly relinquished the victim's car such that it was unavailable to the defendant. *Id.* at 371-72, 440 S.E.2d at 106-07. The defendant contended that he could have made plaster casts of the car's tires to see whether they matched tire prints at a crime scene. *Id.* at 372, 440 S.E.2d at 107. Our Supreme Court held that because "[t]he exculpatory value of any tests defendant wished to perform on the automobile was speculative at best[,]" there was no denial of due process and no error. *Id.* at 373, 440 S.E.2d at 108.

Here, defendant's car was impounded by police in 1996 during the investigation of the murders. The car was subsequently lost, and at trial the State acknowledged that it had not been located since 2000. However, the State did preserve soil samples taken from the car. The defense moved for sanctions pursuant to N.C. Gen. Stat. §§ 15-11.1 and 15A-903, seeking to bar admission of the State's forensic evidence from the car. The trial court denied defendant's motion and the State introduced evidence suggesting the soil from defendant's car matched soil from the location where the victim's bodies were buried. Defendant had access to these samples and presented evidence from an expert witness that soil from the car was not a unique match to the soil at the scene of the victims' burials. Defendant was also able to inform the jury that the police department had lost the car prior to trial.

We find no abuse of discretion in the trial court's denial of defendant's motion for sanctions. Defendant has not shown bad faith on the part of the State in losing the car, and defendant was able to test the soil samples collected from the car and present exculpatory evidence at trial to rebut the State's evidence, as well as to impeach the police department's credibility and competence. This argument is overruled.

## III

**[4]** Defendant also argues the trial court erred by failing to intervene *ex mero motu* to exclude comments made by the prosecutor during closing arguments. We find no error.

Under the applicable standard of review, a defendant bears a heavy burden to show reversible error in this context:

A defendant who fails to interpose an objection at trial to statements made by the prosecutor must demonstrate on appeal "that

the remarks were so grossly improper that the trial court abused its discretion by failing to intervene *ex mero motu.*" *State v. Mitchell,* 353 N.C. 309, 324, 543 S.E.2d 830, 839 (2001). " 'To establish such an abuse, defendant must show that the prosecutor's comments so infected the trial with unfairness that they rendered the conviction fundamentally unfair.' " *Id.* (quoting *State v. Davis,* 349 N.C. 1, 23, 506 S.E.2d 455, 467 (1998), *cert. denied,* 526 U.S. 1161, 144 L. Ed. 2d 219 (1999)). Furthermore, "the comments must be viewed in the context in which they were made and in light of the overall factual circumstances to which they referred." *State v. Call,* 349 N.C. 382, 420, 508 S.E.2d 496, 519 (1998).

*State v. Ward,* 354 N.C. 231, 250, 555 S.E.2d 251, 264 (2001).

Defendants in criminal prosecutions cannot be compelled to give self-incriminating evidence. U.S. Const. amend. V; N.C. Const. art. I, § 23; *see also* N.C. Gen. Stat. § 8-54 (2009). Thus, "a prosecution's argument which clearly suggests that a defendant has failed to testify is error." *State v. Reid,* 334 N.C. 551, 555, 434 S.E.2d 193, 196 (1993). "[T]he purpose behind the rule prohibiting comment on the failure to testify is that extended reference by the court or counsel concerning this would nullify the policy that failure to testify should not create a presumption against the defendant." *State v. Randolph,* 312 N.C. 198, 206, 321 S.E.2d 864, 869 (1984) (citation omitted). However, "[t]he prosecution may comment on a defendant's failure to produce witnesses or exculpatory evidence to contradict or refute evidence presented by the State." *Reid,* 334 N.C. at 555, 434 S.E.2d at 196.

On appeal, defendant challenges the following comments by the prosecutor at closing:

Then I'm going to move on and talk about things that [defendant] did, that man over there, that are inconsistent with what an innocent man would have done.

\*\*\*

Ask yourself, what would an innocent man do if he found out that people that he cared about were missing, and then found out they had been brutally murdered and put into shallow graves? What would they [sic] do? What could a man do that would be consistent with his innocence? Well, when they go missing, he could show concern, like James Kelly did.

\*\*\*

An innocent person would try to help locate Tracy and Rishea when they went missing . . . .When the police ask James Kelly to do something, he does it 15 minutes after he's asked . . . . That's what an innocent man does. An innocent man, I contend . . . would cooperate with the police.

\*\*\*

[T]he defense wants to attack Mr. Kelly, the man that came into this courtroom and answered the questions that were put to him by the State and the defense . . . . But you know who [Mr. Kelly] is. Because you had an opportunity to look at him. Look at him in the eye.

\*\*\*

Well somebody dug the hole. Somebody who can't account for his whereabouts, on at least a portion of Sunday, May 19th, and most of May 20th, 1996.

\*\*\*

Patricia [Cervantes] cooperated with the police. She didn't have anything to hide.

\*\*\*

Remember please, that the defendant chose to put on evidence. If there was really a question about those phone calls, they could have called whoever's name was on these phone records, but they didn't. And that tells you something.

\*\*\*

If they were so worried about his [the witness who saw defendant near the burial site] friend . . . why didn't [the defense] put [the friend] up. They put on evidence.

Defendant contends that these remarks constitute direct reference to his failure to testify and required a curative instruction from the trial court. He relies on two cases in which the defendants were granted new trials after trial courts failed to intervene *ex mero motu* following improper comments by prosecutors. We conclude that each case is readily distinguishable. In *Ward*, the prosecutor made the following comments:

He started out that he was with his wife and child or wife and children or something that morning. We know he could talk, but

he decided just to sit quietly. He didn't want to say anything that would "incriminate himself." So he appreciated the criminality of his conduct all right.

He was mighty careful with who [sic] he would discuss that criminality, wasn't he? He wouldn't discuss it with the people at Dix.

*Ward*, 354 N.C. at 266, 555 S.E.2d at 273. In granting a new trial, the Supreme Court concluded that "the prosecutor impermissibly commented on defendant's silence in violation of his rights under the state and federal Constitutions." *Id.*

In *State v. Shores*, 155 N.C. App. 342, 345, 573 S.E.2d 237, 239 (2002), *disc. review denied*, 356 N.C. 690, 578 S.E.2d 592 (2003), the defendant, charged with murder, had given a brief account of the shooting immediately after his arrest, but then exercised his right to remain silent until trial. On direct examination, the defendant gave a fuller, exculpatory account of the killing, stating that the victim had attacked and threatened him. *Id.* at 346, 573 S.E.2d at 239. "During cross-examination, the State's attorney repeatedly questioned defendant about whether he had ever informed law enforcement that [the victim] kicked him out the front door of the lounge and threatened to kill him." *Id.* We granted a new trial because the repeated questions by the prosecutor

attacked defendant's exercise of his right against self-incrimination in such a manner as to leave a strong inference with the jury that part of defendant's testimony was an after-the-fact creation. Defendant's testimony about Shore's threat was crucial to his defense which centered on self-defense and heat of passion. It seems probable that the State's questions and its closing argument contributed to his conviction.

*Id.* at 352, 573 S.E.2d at 242.

Here, defendant argued in closing that either James Kelly or Patricia Cervantes had actually committed the murders. The prosecutor's comments, unlike those in *Ward* and *Shores*, did not refer directly to defendant's post-arrest silence or even to his decision not to testify at trial. Rather, the prosecution responded to defendant's attacks on Kelly and Cervantes and made permissible comments on "defendant's failure to produce witnesses or exculpatory evidence to contradict or refute evidence presented by the State." *Reid*, 334 N.C. at 555, 434 S.E.2d at 196. The trial court did not err in failing to intervene *ex mero motu*.

*IV*

In his final argument, defendant contends that the murder charges against him should have been dismissed because the delays in his indictment and trial denied him effective assistance of counsel and prejudiced his right to prepare a defense. We disagree.

The standard of review for alleged violations of constitutional rights is *de novo. State v. Tate*, 187 N.C. App. 593, 599, 653 S.E.2d 892, 897 (2007). Once error is shown, the State bears the burden of proving the error was harmless beyond a reasonable doubt. N.C. Gen. Stat. § 15A-1443(b) (2009).

Defendant's second assignment of error, the basis for and caption of his fourth argument, states: "The case should have been dismissed because the long delay in charging the defendant and bringing the matter to trial prejudiced the defendant's right to effective assistance of counsel and to prepare a defense." This single assignment of error actually encompasses three distinct issues: ineffective assistance of counsel, pre-indictment delay, and post-indictment delay. In his brief, defendant does not distinguish these issues, but rather intertwines his case analysis and factual contentions. Because each of these claims implicates a different constitutional right and requires a different analysis, we address them separately.

*Ineffective Assistance of Counsel Claim*

**[5]** As defendant notes, successful ineffective assistance of counsel ("IAC") claims require a showing that: 1) trial counsel's performance was deficient, and 2) the deficient performance prejudiced defendant. *State v. Braswell*, 312 N.C. 553, 562, 324 S.E.2d 241, 248 (1985) (citation omitted). In his brief, defendant asserts that the delay in his indictment prevented him from having counsel appointed which in turn led to hardship in preparing his defense. This argument is not an IAC claim because defendant cannot show deficient performance where he had no counsel to perform at all. Instead, this portion of defendant's argument is better addressed as a claim of prejudice related to pre-indictment delay.

**[6]** Defendant also contends that once he was indicted and trial counsel were appointed, counsels' failure to make a speedy trial motion constituted deficient performance which prejudiced him. However, in April 2005, defendant was represented by counsel at the trial court's hearing on his *pro se* motions to dismiss. The trial court subsequently denied the motions. Defendant does not explain how having his coun-

sel make the same motion would have changed the outcome of either the motion hearing or his trial. Thus, defendant has failed to show that trial counsel's failure to move for dismissal on speedy trial grounds prejudiced him. *Braswell*, 312 N.C. at 562, 324 S.E.2d at 248. This assignment of error is overruled.

### Pre-indictment Delay Claim

[7] "[T]he Speedy Trial Clause of the Sixth Amendment . . . applie[s] only to delay following indictment, information or arrest." *State v. Davis*, 46 N.C. App. 778, 781, 266 S.E.2d 20, 22, *disc. review denied*, 301 N.C. 97, S.E.2d (1980). Pre-indictment delays are reviewed for violation of the due process under the Fifth and Fourteenth Amendments. *Id.* To prevail, a defendant "must show both actual and substantial prejudice from the pre-indictment delay *and* that the delay was intentional on the part of the state in order to impair defendant's ability to defend himself or to gain tactical advantage over the defendant." *Id.* at 782, 266 S.E.2d at 23 (emphasis in original) (citing *United States v. Lovasco*, 431 U.S. 783, 790, 52 L. Ed. 2d 752, 759, *reh'g denied*, 434 U.S. 881, 54 L. Ed. 2d 164 (1977)). Having carefully reviewed the record and considered defendant's arguments, we hold that he has failed to show actual prejudice under the first prong of the *Davis* test.

Defendant asserts that the length of delay in indicting him "created a reasonable possibility of prejudice."[1] However, defendant must show more than "a reasonable possibility of prejudice;" he must show *actual* prejudice. *Id.* at 782, 266 S.E.2d at 23. Defendant alleges that the delay rendered him "unable to fully and thoroughly investigate the facts while evidence was readily available." He further states that the State lost his car, one witness died and other witnesses "could not recall facts clearly and may have forgotten details" beneficial to him.

> A general allegation of prejudice supported merely by claims of faded memory will not sustain the defendant's burden of proof on the issue of prejudice. The defendant must show that the evidence or testimony lost because of faded memory would have

---

1. Defendant takes this language from *State v. Johnson*, 275 N.C. 264, 277, 167 S.E.2d 274, 278-79 (1969). We note that in *Johnson*, which was decided prior to *Lovasco* and *Davis*, the Court relied on speedy trial cases and considered the facts under a Sixth Amendment analysis. *Id.* at 270-72, 167 S.E.2d at 279. However, as discussed above, the United States and North Carolina Supreme Courts have since clarified and distinguished constitutional claims arising from pre-and post-indictment delays. *See Davis*, 46 N.C. App. at 781, 266 S.E.2d at 22.

been helpful, was significant and was lost because of pre-indictment delay.

*State v. Holmes*, 59 N.C. App. 79, 82, 296 S.E.2d 1, 2 (1982) (citing *State v. Dietz*, 289 N.C. 488, 493, 223 S.E.2d 357, 360 (1976). Defendant's general assertions do not show actual prejudice— that defendant would have been acquitted but for the delay in the indictment. As discussed previously, although his car was lost, defendant was still able to test the soil samples taken from it. In addition, defendant makes no claim that any particular witness might have given specific testimony which was significant and helpful to him. Thus, defendant has not shown actual prejudice in the pre-indictment delay and, in turn, fails to show any violation of his due process rights.

### Post-Indictment Delay Claim

[8] Defendant's second assignment of error mentions "delay . . . in bringing the matter to trial" and his brief cites the standard of review for post-indictment delay claims. However, he fails to set out any authority or argument on this issue, confining his discussion to the pre-indictment delay. This issue is not properly before us.

No error.

Chief Judge MARTIN and Judge HUNTER, Robert C., concur.