An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1242

NORTH CAROLINA COURT OF APPEALS

Filed:  29 July 2014

STATE OF NORTH CAROLINA

v.

DORAN ARTHUR ATKINS

Mecklenburg County
Nos. 11 CRS 210032-37

Appeal by defendant from judgments entered 15 February 2013 by Judge Paul G. Gessner in Mecklenburg County Superior Court. Heard in the Court of Appeals 17 March 2014.

*Attorney General Roy Cooper, by Assistant Attorney General Kathleen N. Bolton, for the State.*

*Paul M. Green, for defendant-appellant.*

CALABRIA, Judge.

Doran Arthur Atkins ("defendant") appeals from judgments entered upon jury verdicts finding him guilty of first degree rape, second degree sex offense, and first degree kidnapping. We find no error.

## I. Background

In February 2011, "Mary"[1] stayed at a Salvation Army homeless shelter in Charlotte, North Carolina. Defendant, Mary's boyfriend, stayed at a men's shelter about a mile away. On the evening of 26 February 2011, Mary and defendant walked to a Shell station in Mecklenburg County. They argued, reconciled, and started walking when defendant shoved Mary into an alleyway, hit her in the head, and choked her with his hands. Mary unsuccessfully tried to escape, but defendant threatened her life with a broken bottle and choked her several times with his belt until she lost consciousness. He also forced her to perform fellatio twice and forced her to have intercourse while the belt remained around her neck.

The next morning, defendant accompanied Mary to the Shell station, but warned her that he would kill her if she tried to contact law enforcement. While at the Shell station, Mary asked a man to contact law enforcement for her because she had been kidnapped, raped, and beaten. Shortly afterwards, Officer Amy Aquino ("Officer Aquino") of the Charlotte-Mecklenburg Police Department ("CMPD") arrived and detained defendant. CMPD Officer Brian Koll also arrived and assisted Officer Aquino. Mary was transported to the hospital, and a sexual assault

---

[1] We use a pseudonym both to protect the victim's privacy and for ease of reading.

evidence collection kit was taken.

Defendant was arrested and subsequently charged with first degree rape, two counts of first degree sex offense, first degree kidnapping, assault by strangulation, and assault on a female. On 13 August 2012, defendant filed a motion to dismiss for lack of a speedy trial. After a hearing on 22 August 2012, the trial court denied defendant's motion.

Defendant's case was subsequently tried on 11 February 2013. The jury returned verdicts finding defendant guilty of first degree rape, first degree sexual offense, second degree sexual offense, first degree kidnapping, assault by strangulation, and assault on a female. The State submitted a Prior Record Level Worksheet for sentencing purposes. According to the State, defendant had six points for three prior Class I felonies from out-of-state convictions in West Virginia and South Carolina. Defendant's counsel expressly stipulated to defendant's prior convictions and that defendant qualified as a Level III for sentencing. Defendant's counsel did not object to classifying the out-of-state offenses as Class I felonies.

The trial court arrested judgment for the first degree sexual offense, assault by strangulation, and assault on a female. Defendant was sentenced to a minimum of 317 months to a

maximum of 390 months for the first degree rape offense; a minimum of 96 months to a maximum of 125 months for the second degree sexual offense; and a minimum of 96 months to a maximum of 125 months for the first degree kidnapping offense. All of defendant's sentences were to be served in the custody of the Division of Adult Correction. Defendant appeals.

## II. Speedy Trial

Defendant argues that the trial court erred in denying his motion to dismiss for lack of a speedy trial. We disagree.

The standard of review for an alleged constitutional violation is *de novo*. *State v. Graham*, 200 N.C. App. 204, 214, 683 S.E.2d 437, 444 (2009). The Sixth Amendment to the United States Constitution guarantees the right to a speedy trial. U.S. Const. Amend. VI. Additionally, the North Carolina Constitution provides defendants with the right to a speedy trial. N.C. Const., art.1, sec. 18. "When reviewing speedy trial claims, we employ the same analysis under both the Sixth Amendment and Article I." *State v. Washington*, 192 N.C. App. 277, 282, 665 S.E.2d 799, 803 (2008).

The United States Supreme Court devised a four-factor balancing test analyzing speedy trial cases. *Id.* (citing *Barker v. Wingo*, 407 U.S. 514, 530, 33 L.Ed.2d 101, 116-17 (1972)).

The *Barker* factors are (1) the length of delay, (2) the reason for the delay, (3) defendant's assertion of his right to a speedy trial, and (4) prejudice to the defendant. *Id*. No one factor is dispositive in determining whether the accused has been deprived of his right to a speedy trial. *Id*. If the balancing test reveals a defendant's right to a speedy trial was violated, the remedy is dismissal. *Id*. at 298, 665 S.E.2d at 812.

In the instant case, defendant was arrested on 27 February 2011 and indicted on 7 March 2011. On 13 August 2012, defendant filed a motion to dismiss for lack of a speedy trial. Defendant's motion was heard on 22 August 2012. Thus, defendant's incarceration prior to the hearing on his motion to dismiss was approximately 17 months. Although the United States Supreme Court has not set out a definite period for which a delay will be deemed presumptively prejudicial, it is acknowledged that delays approaching one year will suffice. *Doggett v. United States*, 505 U.S. 647, 651 n.1, 120 L.Ed.2d 520, 528 n.1 (1992). *See also State v. Webster*, 337 N.C. 674, 679, 447 S.E.2d 349, 351 (1994) (sixteen month delay enough to trigger examination of the other factors); *State v. Pippin*, 72 N.C. App. 387, 391, 324 S.E.2d 900, 904 (1985) (fourteen month

delay between arrest and motion to dismiss granted). Since defendant timely asserted his right to a speedy trial and the pre-trial delay in this case was in excess of one year, we must determine both the reason for the delay and whether the delay was prejudicial to the defendant.

A. Reason for Delay

Some delay between arrest and trial is inevitable and "[t]he constitutional guarantee does not outlaw good-faith delays which are reasonably necessary for the State to present its case." *State v. Spivey*, 357 N.C. 114, 119, 579 S.E.2d 251, 255 (2003) (citation omitted). "[A] defendant has the burden of showing that the delay was caused by the neglect or willfulness of the prosecution[,] [which may be rebutted with] evidence fully explaining the reasons for the delay." *State v. Dorton*, 172 N.C. App. 759, 764, 617 S.E.2d 97, 101 (2005) (quoting *Spivey*, 357 N.C. at 119, 579 S.E.2d at 255). In addition, this Court has held that trying older cases "is an appropriate method of determining the order in which to dispose of cases." *Id*. at 764, 617 S.E.2d at 101.

In *Spivey*, the defendant's case was delayed four and one-half years because the court docket was "clogged with murder cases." *Spivey*, 357 N.C. at 119, 579 S.E.2d at 255. According

to its policy, "[t]he district attorney['s office] dealt with the cases in chronological order, beginning with the oldest." *Id*. at 120, 579 S.E.2d at 255. The Court held that since the delay was caused by "neutral factors," the defendant "failed to present *any* evidence that the delay was caused by the State's neglect or willfulness." *Id*. at 121, 579 S.E.2d at 256.

In the instant case, defendant argued at the hearing that the only reason for the delay was the prosecution's failure to call the case for trial. Defendant presented evidence of statistics from the office of the Trial Court Administrator regarding courtroom usage and the Mecklenburg County District Attorney's policy of hearing adult rape cases in teams on alternating weeks. Defendant specifically argued that the District Attorney's office's strategy of splitting the assistant district attorneys ("ADAs") into "teams" and rotating their court appearances for adult rape cases was a misuse of courtroom time that denied defendants their rights to speedy trial.

The State rebutted defendant's arguments with evidence regarding hearing cases in chronological order, as well as the arrest dates of twelve of the cases that preceded defendant's arrest date. The State also presented evidence regarding case assignments and reports. Defendant's case was assigned to Ms.

Pendergrass, an ADA who was hospitalized on medical leave for several months. Prior to her medical leave, the State had not received the DNA report from Mary's sexual assault evidence collection kit. The DNA report was necessary for the State to present its case at defendant's trial. Since Ms. Pendergrass was on medical leave, another formerly retired ADA, Mr. Cook, was hired to assist with her caseload during the time she was gone. The DNA report from Mary's sexual assault evidence collection kit and the substitution of another ADA for one on medical leave were both neutral factors. Therefore, the State's explanation regarding the District Attorney's policy for scheduling cases was an appropriate reason for the delay. In addition, the State's delay while waiting for evidence and substituting an ADA can both be considered good faith delays. Defendant has failed to show that the State neglected or willfully delayed his trial.

## B. Prejudice to Defendant

The purposes of the right to a speedy trial are: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired. *Dorton*, 172 N.C. App. at 765, 617 S.E.2d at 101 (citing *Barker*, 407 U.S. at 532,

33 L.Ed.2d at 118). "[T]he test for prejudice is whether significant evidence or testimony that would have been helpful to the defense was lost due to delay." *State v. Hammonds*, 141 N.C. App. 152, 162-63, 541 S.E.2d 166, 174-75 (2000) (citation omitted).

In *Hammonds*, the defendant argued that his defense was prejudiced in part by the death of the State's principal investigator while his trial was delayed for over four years. *Id.* at 163, 541 S.E.2d at 175. However, the State presented evidence at trial through other investigators who "testified to the same events and observations sought by [the] defendant[.]" *Id.* at 163, 541 S.E.2d at 175. Therefore, while this Court did not condone the length of the delay, the State presented evidence regarding the same events and observations sought by defendant. *Id.* at 163-64, 541 S.E.2d at 175. The Court held that the defendant was not prejudiced by the death of the State's principal investigator. *Id.*

In the instant case, defendant does not argue that his pre-trial incarceration was oppressive or that he had any anxiety or particular concerns except for his concerns regarding his mother's testimony. Specifically, defendant's mother could have testified regarding Mary's credibility and that Mary had used

crack cocaine.

At trial, Mary testified as the State's witness, and the evidence she presented included some of the same information defendant contends would have been his mother's testimony. According to Mary, she had been dating defendant for two years and they engaged in consensual sexual intercourse. She also testified that she loved defendant and that they had expressed that love for one another just prior to the assault. Mary also admitted to using crack cocaine three days before the assault occurred.

Susan Lewis-Kafuko ("Lewis-Kafuko"), a friend of defendant's sister, testified on defendant's behalf. Lewis-Kafuko testified that she had spent the afternoon of 26 February 2011 with Mary and defendant. During that time, Lewis-Kafuko witnessed the couple express love towards one another and discuss their plans of moving in together and establishing a family together.

Both Mary and Lewis-Kafuko testified to the same events and observations sought by defendant regarding his mother's testimony. Moreover, Mary had first-hand knowledge of the events that occurred, while defendant's mother only had first-hand knowledge of their relationship and was not a witness to

the events that led to defendant's arrest. Furthermore, defendant does not dispute Mary's testimony on appeal. Since defendant fails to dispute Mary's testimony or show how his mother's testimony would have been helpful to his defense, the loss of his mother's testimony did not prejudice his defense.

In balancing all of the *Barker* factors, neither the reason for the delay nor the prejudice to the defendant weighs against the State. Therefore, we hold that the trial court did not err in denying defendant's motion to dismiss for lack of a speedy trial.

## III. Sentencing

Defendant also argues that the trial court erred in calculating his prior record level. Specifically, defendant contends the out-of-state charges used in this calculation should have been considered misdemeanors rather than felonies. We disagree.

The standard of review for the determination of a prior record level is *de novo*. *State v. Bohler*, 198 N.C. App. 631, 633, 681 S.E.2d 801, 804 (2009). A determination regarding a defendant's prior record level must be supported by competent evidence. *Id*. at 633, 681 S.E.2d at 804.

"[A] conviction occurring in a jurisdiction other than

North Carolina is classified as a Class I felony if the jurisdiction in which the offense occurred classifies the offense as a felony." N.C. Gen. Stat. § 15A-1340.14(e) (2013). The State is "not required to show that the [out-of-state] offenses were 'substantially similar' to North Carolina offenses [if] the prosecution only classifie[s] the convictions at the default level, Class I." *State v. Hinton*, 196 N.C. App. 750, 755, 675 S.E.2d 672, 675-76 (2009) (citation omitted). If the State submits a felony conviction from another jurisdiction under the default classification of a Class I felony, it has "met its burden and [is] required to prove nothing further in support of that classification." *State v. Threadgill*, ___ N.C. App. ___, ___, 741 S.E.2d 677, 681 (2013). However, "[i]f the offender proves by the preponderance of the evidence that an offense classified as a felony in the other jurisdiction is substantially similar to an offense that is a misdemeanor in North Carolina, the conviction is treated as that class of misdemeanor for assigning prior record level points." N.C. Gen. Stat. § 15A-1340.14(e).

The State must prove, by a preponderance of the evidence, that the prior convictions exist and the offender before the court is the person previously convicted. N.C. Gen. Stat. §

15A-1340.14(f) (2013). Acceptable methods of proving prior convictions include presenting copies of records maintained by the Division of Criminal Information ("DCI") and stipulating to the existence of these offenses. *Id.*

In the instant case, defendant contends that an out-of-state shoplifting offense and weapons offense should have been classified as misdemeanors because the equivalent North Carolina offenses are misdemeanors. However, defendant presented no evidence to show that these offenses were substantially similar to any North Carolina offenses. The State presented copies of records maintained by DCI showing that defendant's out-of-state offenses were felonies in their respective jurisdictions. Defendant's counsel stipulated that defendant had six points according to the prior record level worksheet, and that defendant had a Prior Record Level III for sentencing. Therefore, the offenses were properly classified as default Class I felonies.

Defendant's final contention is that his counsel's stipulation to the existence of these felony convictions was ineffective assistance of counsel. However, defendant fails to explain how this stipulation satisfies the two-part test set forth in *State v. Braswell*. *See Braswell*, 312 N.C. 553, 562,

324 S.E.2d 241, 248 (1985) (holding "the defendant must show counsel's performance was deficient . . . [and] the deficient performance prejudiced the defense."). Therefore, this argument is without merit.

## IV. Conclusion

Although this Court does not condone the State's delay, neither the reason for the delay nor the alleged prejudice to the defendant denied defendant his right to a speedy trial. Therefore, the trial court did not err in denying defendant's motion to dismiss. In addition, the State presented sufficient evidence of defendant's prior record level, and counsel stipulated to defendant's prior record level. Accordingly, the trial court did not err in sentencing defendant as a Prior Record Level III.

No error.

Chief Judge MARTIN and Judge McGEE concur.

Report per Rule 30(e).