IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-40

No. COA21-303

Filed 18 January 2022

Pasquotank County, No. 16 CRS 51943, 20 CRS 000592

STATE OF NORTH CAROLINA

v.

JOHNATHAN WENDELL WARD

Appeal by defendant from judgment entered 9 December 2020 by Judge Jeffery

B. Foster in Pasquotank County Superior Court. Heard in the Court of Appeals 14

December 2021.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Justin Isaac*
> *Eason, for the State.*
>
> *Mark Montgomery for defendant-appellant.*

TYSON, Judge.

Johnathan Ward ("Defendant") appeals a jury's verdict finding him guilty of

statutory rape and abduction of a child. We find no prejudicial error.

## I.    Background

Katy was 14 years old when she attended a gathering at her grandmother's

home on 25 December 2016. *See* N.C. R. App. P. 42(b) (pseudonym used to protect the

identity of the juvenile). Defendant attended the same gathering because he was

dating Katy's aunt, Naquana.

¶ 3    On 26 December 2016, Katy's sister, Ada Doe, awoke to find Katy was no longer inside the bedroom with her. Ada looked for her sister and awoke her mother and stepfather. The family looked for Katy and eventually they spotted Defendant's car in the apartment complex parking lot beside their house. Ada and her stepfather approached Defendant's car and saw Defendant in the front seat and Katy in the backseat. Ada and her stepfather tried to open the car doors and rapped upon the windows. Defendant started the car and drove away with Katy still in the backseat. Naquana called the police.

¶ 4    Katy was found and taken to Children's Hospital of the King's Daughters by her biological father, Kenneth Doe. Katy's mother, Denita Doe, testified at trial that Katy was missing for eight to ten hours. Denita testified Katy was "distant, upset, scared" upon being reunited at the hospital. Denita arranged an interview for Katy at Kid's First Child Advocacy Center ("Kid's First").

¶ 5    Ida Rodgers, a licensed clinical social worker, conducted Katy's interview at Kid's First. Rodgers testified when she met Katy on 28 December 2016 Katy was "very withdrawn . . . and she had a hood over her head. Her face was not visual (sic) . . . She was extremely nervous and very soft spoken . . . reluctant to talk."

¶ 6    Katy told Rodgers that she had attempted to talk to Defendant, and that is why she was inside of his car on 26 December 2016. Katy told Rodgers that Defendant

had panicked and drove away, and that she had slept in a bed with him at his friend's house. Katy did not disclose any sexual activity with Defendant during the first interview.

¶ 7        Rodgers interviewed Katy again on 28 February 2020. At this interview, Katy told Rodgers she had been raped once, and Defendant had attempted to rape her again.

¶ 8        Katy was 18 years old when she testified at Defendant's trial. Katy told the jury she had met Defendant in the summer of 2016. Defendant began to show an interest in her, which made her feel uncomfortable. Katy testified that during the summer of 2016, she was asleep in her cousin's room and she "woke up to [Defendant being] knelt beside me, and he was touching me . . . [m]y breasts and my vagina." Katy testified Defendant was touching her on top of her clothing.

¶ 9        Katy testified of another incident when she was asleep at her aunt's house in a recliner and awoke to find Defendant touching her breasts. Defendant "pulled his penis out" and "pulled [Katy's] head toward that way" and asked her to perform oral sex on him.

¶ 10       The prosecutor asked Katy during direct examination if Defendant had engaged in sexual activities with her. Katy testified she had been asleep on her aunt's sofa and all she remembered "is him putting his penis inside of [my vagina]." The prosecutor asked Katy if Defendant had sex with her more than once, and Katy

replied "Yes." Katy testified she was 14 years old, and Defendant was 28 years old when these incidents had occurred.

¶ 11 During trial, Defendant expressed dissatisfaction with his appointed counsel and claimed to have fired him "seven times." The trial judge heard Defendant's concerns regarding the witness list and the State's burden to prove elements of the charges and answered Defendant's questions. Defendant tried to "relieve [counsel] of his duties" on the second day of trial. Defendant stated he would like to represent himself, and the court denied his motion twice.

¶ 12 The jury found Defendant guilty of statutory rape and abduction of a child. Defendant was sentenced to an active term of imprisonment for 240 to 348 months for the statutory rape conviction to run concurrently to a term of active imprisonment of 16 to 29 months for the abduction of a child.

## II. Jurisdiction

¶ 13 This Court has jurisdiction pursuant to N.C. Gen. Stat. § 7A-27(b) (2021).

## III. Issues

¶ 14 Defendant raises two issues on appeal. First, whether the trial court erred by not inquiring of Defendant's disagreements with his counsel's trial strategy and his request to represent himself. Second, whether the trial court committed plain error in allowing the State's expert witness to testify regarding Defendant's truthfulness, and in the alternative, whether Defendant received ineffective assistance of counsel.

## IV. Argument

### A. Defendant's Complaints Regarding His Counsel

#### 1. Standard of Review

¶ 15 "The standard of review for alleged violations of constitutional rights is *de novo.*" *State v. Graham*, 200 N.C. App. 204, 214, 683 S.E.2d 437, 444 (2009).

#### 2. Absolute Impasse

¶ 16 Defendant argues the trial court committed errors during trial and each error prejudiced his constitutional rights as a matter of law. Defendant argues that he voiced dissatisfaction with his attorney on the first and second day of trial and then asked to have his attorney removed and to represent himself.

¶ 17 The Sixth Amendment to the Constitution of the United States gives a criminal defendant the "right to proceed without counsel when he voluntarily and intelligently elects to do so[.]" *Faretta v. California*, 422 U.S. 806, 807, 45 L. Ed. 2d 562, 566 (1975).

¶ 18 Defendant argues he is entitled to an "*Ali*" error and to have his strategic wishes honored by defense counsel. An *Ali* error occurs when "counsel and a fully informed criminal defendant client reach an absolute impasse as to such tactical decisions, the client's wishes must control[.]" *State v. Ali*, 329 N.C. 394, 404, 407 S.E.2d 183, 189 (1991).

¶ 19 A defendant's disagreement with counsel will not always rise to the level of an absolute impasse as noted in *State v. Curry,* 256 N.C. App. 86, 97, 805 S.E.2d 552,

559 (2017). In *Curry*, the defendant argued an absolute impasse occurred with his attorney because his counsel did not believe him about the crime and charges. *Id.* at 98, 805 S.E.2d at 559. In *Curry*, this Court held "no actual impasse exists where there is no conflict between a defendant and counsel. . . . Moreover, when a defendant fails to complain about trial counsel's tactics and actions, there is no actual impasse." *Id.* at 97, 805 S.E.2d at 559 (citations omitted). This Court emphasized that conclusory allegations of impasse are not enough. *Id.* at 98, 805 S.E.2d at 559. This Court reasoned in *Curry*, the defendant "was the sole cause of any purported conflict that developed, and there has been no reasonable or legitimate assertion by [d]efendant that an impasse existed that would require a finding that counsel was professionally deficient in this case." *Id.*

¶ 20    The first colloquy between Defendant and the trial court occurred as follows:

> THE COURT: Did you have some concerns about your attorney that you wanted to express?
>
> . . . .
>
> THE DEFENDANT: It seems as though he couldn't do anything I asked him to do for some reason or another. You know, I asked for certain people to be taking the stand and I asked him for certain evidence, like, there was things that was said in court because everyone who was on the original case is no longer here, you know, and there's new charges are coming up out of the blue, so I wanted to fill you in on how the case has gone so far I guess.
>
> THE COURT: Okay. So your attorney -- you say you

got some witnesses that you want to call that he doesn't want to call?

THE DEFENDANT: Well, I mean, he said he couldn't -- he said he couldn't find them or he needed an address, but they already on the witness list it seems, so I will just cross-examine them.

 . . . .

THE COURT: If they're on the witness list, they can be called. Whether or not they're called is a matter of legal strategy.

THE DEFENDANT: Right. That's what I was saying. It seems as though he don't have my best interests at heart.

THE COURT: Well, I mean, why do you say that?

THE DEFENDANT: I mean, just the excuses that was kind of weak, you know, tactics to keep prolonging and buying time. I tried to fire him seven times, and he refused to admit that I fired him, I guess, so he keeping his voicemail secret. He's not making the district attorney prove anything she is saying or, you know –

THE COURT: Well, I can promise you, sir, that before this case goes to the jury, the State is going to prove every allegation beyond a reasonable doubt, and I get to make that final call.

THE DEFENDANT: Okay.

THE COURT: If they don't prove their case and there's not enough evidence to send it to the jury, I won't let it go to the jury.

THE DEFENDANT: And I also feel as though he's corroborating misconduct or turning a blind eye to a lot of

misconduct, but, I mean, it's really speculation so I can't really –

THE COURT: Then you understand speculation, we can't do anything about that.

THE DEFENDANT: I hope we keep that attitude.

THE COURT: Okay. All right. Anything else?

THE DEFENDANT: No, sir.

The second colloquy occurred as follows:

THE DEFENDANT: I would like to relieve him of his duties. I asked him to do a few things yesterday he refused to do.

THE COURT: Mr. Ward, once again, I ruled on that motion yesterday. I am going to deny that motion, okay, and nothing is going to change between yesterday and today, so that motion is still denied, all right? Anything else?

 . . . .

THE DEFENDANT: I would really like to represent myself today.

THE COURT: Well, again, for the last time, that motion is denied, okay?

THE DEFENDANT: All right.

The trial judge heard Defendant's concerns, considered them, personally addressed, explained, and assured Defendant of the integrity of the process and of his rights. At the conclusion of the two colloquies, the trial judge gave Defendant another opportunity to voice any concerns and addressed them. Defendant communicated he

was satisfied and had nothing further to say. Defendant's questions and comments cannot be said to rise to the level of an "absolute impasse as to such tactical decisions" as was described in *Ali*. *Ali*, 329 N.C. at 404, 407 S.E.2d at 189.

¶ 23    Defendant's complaints regarding the witness list and proving the elements of his charges were deemed misunderstandings that were corrected during the colloquies by the trial court. Like the defendant in *Curry*, Defendant may have had a personality conflict with his counsel, and asserted he did not believe defense counsel had his best interest at heart. Defendant has failed to show an "absolute impasse as to such tactical decisions" occurred during trial. *Id*. Defendant's argument is overruled.

### 3. *Right to be Informed*

¶ 24    Defendant concedes he can find no authority to support his notion that the trial court committed an *Ali* error. Defendant asserts "[i]t follows that a defendant has the right to be so informed[]" because "in order for a defendant to exercise his [*Ali*] right, he must be made aware that he has it."

¶ 25    In assessing the right to self-representation under the Sixth Amendment, our Supreme Court held that when the defendant effectively admits that no request for self-representation had been communicated to the trial court during the pretrial phase, the recognition of a right under the Constitution does not carry with it a concurrent recognition of a right to be notified of the existence of that right. *State v.*

*Hutchins*, 303 N.C. 321, 337-38, 279 S.E.2d 788, 798-99 (1981).

¶ 26 After the jury was seated, sworn and during the second day trial, Defendant raised his motion to discharge his appointed counsel. Defendant asserts the trial court denied the motion without conducting a "thorough analysis" in accordance with N.C. Gen. Stat. § 15A-1242 (2021).

¶ 27 This Court has held "while the right to counsel may be waived only expressly, knowingly, and intelligently, the right to self-representation can be waived by failure timely to assert it, or by subsequent conduct giving the appearance of uncertainty." *State v. Walters*, 182 N.C. App. 285, 292, 641 S.E.2d 758, 762 (2007) (citation and internal quotation marks omitted). "Statements of a desire not to be represented by court-appointed counsel do not amount to expressions of an intention to represent oneself. *Hutchins*, 303 N.C. at 339, 279 S.E.2d at 800.

¶ 28 Here, the transcript shows Defendant expressed generalized dissatisfaction with his attorney on the first day of trial, as well as a substantial level of confusion regarding the nature of the charges and process. Defendant insinuated that various individuals, including witnesses, the prosecutor, and his attorney, were engaged in misconduct.

¶ 29 Defendant did not clearly express a wish to represent himself until the second day of trial. The trial court gave Defendant several opportunities to address and consider whether he wanted continued representation by counsel and personally

addressed and inquired into whether Defendant's decision was being freely, voluntarily, and intelligently made. Defendant's arguments are without merit and overruled.

## B. Expert Witness Testimony

### *1. Plain Error*

¶ 30 Defendant argues the trial court erred in permitting State's witness Ida Rodgers to use the terms "victim" and "disclosure" during her testimony.

¶ 31 "[T]he plain error standard of review applies on appeal to unpreserved instructional or evidentiary error." *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012).

> For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty.

*Id.*

¶ 32 Our Supreme Court recently considered this issue and determined: "[d]efendant has not shown that the use of the word 'disclose' had a probable impact on the jury's finding that he was guilty." *State v. Betts*, 2021-NCSC-68, ¶ 21, 377 N.C. 519, __, 858 S.E.2d 601, 606 (concluding the jury had heard substantial evidence the defendant inappropriately touched the victim and had ample opportunities to assess her credibility, thus making it improbable the word "disclose" had an impact on their

verdict). Further "[e]ven if the trial court erred in [permitting] use of the term 'victim,' [the defendant] must show prejudice to receive a new trial." *State v. Jackson*, 202 N.C. App. 564, 569, 688 S.E.2d 766, 769 (2010).

¶ 33        The word "disclose" was used several times throughout the trial, and during the jury charge. The word "victim" also appears several times throughout the indictment, the pattern jury instructions, and several dozen times throughout the trial. We again caution of the State's repeated use of both terms, "disclose" and "victim," as the State carries the burden of proof and overuse of both characterizations may prejudice a defendant.

¶ 34        Here, the jury had the opportunity to hear from 18-year-old Katy, several of her family members, Katy's counselor, and others. Katy clearly articulated the kind and nature of the assaults inflicted on her by Defendant. Defendant had a fair and full opportunity to cross-examine her and all of the other State's witnesses and to present his own evidence and witnesses in rebuttal. The jury weighted the credibility of all witnesses and evidence to reach its verdicts. Defendant has failed to show plain error or prejudice to award a new trial.

## 2. *Ineffective Assistance of Counsel*

¶ 35        As an alternative to Defendant's appeal regarding the words Ida Rodgers used in her testimony, Defendant argues he received ineffective assistance of counsel because counsel failed to object to Rodger's use of those terms during her testimony.

> To succeed on an IAC claim, defendant "must show that
> counsel's representation fell below an objective standard of
> reasonableness" and "that there is a reasonable probability
> that, but for counsel's unprofessional errors, the result of
> the proceeding would have been different."

*State v. Womble*, 272 N.C. App. 392, 402, 846 S.E.2d 548, 555 (2020) (citations

omitted).

For the same reason plain error review fails under these facts as described

above, Defendant's IAC argument also fails. Given the other overwhelming evidence

of guilt presented, Defendant has shown no reasonable probability the jury would

have reached a different verdict, if his trial counsel had objected to the use of the

terms "disclosure" and "victim" during trial to demonstrate prejudice. Defendant's

IAC argument has no merit and is dismissed.

## V.    Conclusion

The trial court did not commit a reversible error by failing to conduct a more

"thorough analysis" before denying Defendant's right to represent himself. The trial

court did not commit a Constitutional error by failing to inform Defendant of his "*Ali*"

error rights. *Ali*, 329 N.C. at 404, 407 S.E.2d at 189.

Defendant does not show plain error or prejudice by the trial court permitting

an expert witness to use the words "disclose" during her testimony and the use of

"victim" on several occasions. Defense counsel did not provide ineffective assistance

of counsel by failing to object to the use of those same words during trial. Defendant

received a fair trial free from prejudicial errors he preserved or as reviewed for plain

error. We find no prejudicial error. *It is so ordered.*

NO PREJUDICIAL ERROR.

Judges CARPENTER and GORE concur.