STATE OF NORTH CAROLINA v. CURTIS LEON FIELDS

No. COA11-613

(Filed 6 March 2012)

**Search and Seizure—traffic stop—weaving in lane—reasonable suspicion**

The trial court properly denied defendant's motion to suppress the results of a traffic stop in a driving while impaired prosecution where defendant was weaving in his lane, the weaving was characterized by the officer as "bouncing," and oncoming drivers were taking evasive maneuvers.

Appeal by defendant from order entered 17 November 2010 by Judge William R. Pittman and judgment entered 23 February 2011 by Judge W. Allen Cobb, Jr. in Sampson County Superior Court. Heard in the Court of Appeals 9 November 2011.

*Attorney General Roy Cooper, by Assistant Attorney General William P. Hart, Jr., for the State.*

*Mary McCullers Reece for defendant-appellant.*

GEER, Judge.

Defendant Curtis Leon Fields appeals from his convictions for habitual driving while impaired ("DWI") and driving while license revoked. On appeal, defendant contends that the trial court erred in denying his motion to suppress when, defendant argues, the police officer lacked a reasonable articulable suspicion to stop him. We hold that the order denying the motion to suppress was amply supported by the trial court's uncontested findings that defendant's weaving in his own lane was sufficiently frequent and erratic to prompt evasive

**STATE v. FIELDS**

[219 N.C. App. 385 (2012)]

maneuvers from other drivers. The trial court, therefore, did not err in denying the motion to suppress.

## Facts

At the hearing on defendant's motion to suppress and at trial, the State's evidence tended to show the following facts. On 8 May 2010, Deputy Sheriff Joshua Akers of the Sampson County Sheriff's Department observed a white Chevrolet Metro automobile with dim taillights while he was going to lock up the post office in Garland, North Carolina. He called Deputy Sheriff Austin Kelly Coleman and alerted him regarding the automobile.

Deputy Coleman followed the car for three quarters of a mile to a mile and observed that the driver, subsequently identified as defendant, was driving erratically. Defendant was weaving within his lane of travel constantly and drove on the center line at least once. There was a high level of traffic that evening, and Deputy Coleman stopped defendant when he observed oncoming drivers pulling over to the side of the road in reaction to defendant's driving.

It was approximately 10:30 p.m. when Deputy Coleman pulled over defendant. When Deputy Coleman approached defendant's car, he smelled a strong odor of alcohol coming from the vehicle and from defendant's person.

Deputy Coleman called Deputy Akers for backup. Deputy Akers, who believed defendant appeared intoxicated, obtained defendant's consent to search his vehicle. In the car, Deputy Akers found an open container of malt liquor as well as other alcohol. Deputy Akers then asked defendant and his passengers to get out of the car.

Although defendant performed fairly on three field sobriety tests, Deputy Coleman formed the opinion that defendant had consumed enough alcohol so as to impair his physical and mental faculties. Deputy Coleman charged defendant with DWI and driving with his license revoked and transported defendant to the Sampson County Sheriff's Office. An intoxilyzer test was performed at 12:44 a.m., and defendant registered .13 grams of alcohol per 210 liters of breath.

Defendant was indicted for driving with his license revoked and habitual DWI on 12 July 2010. The trial court denied defendant's motion to suppress evidence obtained as a result of the traffic stop in an order entered on or about 17 November 2010. The jury convicted defendant of DWI and driving with his license revoked, and defendant

stipulated to three prior DWI convictions for purposes of the habitual DWI indictment. The trial court sentenced defendant to a presumptive-range term of 24 to 29 months imprisonment. Defendant timely appealed to this Court.

### Discussion

Defendant contends that Deputy Coleman lacked reasonable suspicion to justify his traffic stop of defendant and that the trial court, therefore, should have granted his motion to suppress. He further asserts that in the absence of the evidence obtained as a result of the stop, insufficient evidence existed to support his conviction, and the trial court should have granted defendant's motion to dismiss.

"The scope of review of the denial of a motion to suppress is 'strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law.' " *State v. Bone*, 354 N.C. 1, 7, 550 S.E.2d 482, 486 (2001) (quoting *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982)). The trial court's conclusions of law are fully reviewable on appeal. *State v. Hughes*, 353 N.C. 200, 208, 539 S.E.2d 625, 631 (2000).

Under the Fourth Amendment, a police officer is permitted to "conduct a brief investigatory stop of a vehicle and detain its occupants without a warrant[.]" *State v. McArn*, 159 N.C. App. 209, 212, 582 S.E.2d 371, 374 (2003). However, "in order to conduct a warrantless, investigatory stop, an officer must have reasonable and articulable suspicion of criminal activity." *Hughes*, 353 N.C. at 206–07, 539 S.E.2d at 630. "The reasonable suspicion must arise from the officer's knowledge prior to the time of the stop." *Id.* at 208, 539 S.E.2d at 631.

Reasonable suspicion requires "a minimal level of objective justification, something more than an 'unparticularized suspicion or hunch.' " *State v. Watkins*, 337 N.C. 437, 442, 446 S.E.2d 67, 70 (1994) (quoting *United States v. Sokolow*, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 10, 109 S. Ct. 1581, 1585 (1989)). "[T]he overarching inquiry when assessing reasonable suspicion is always based on the *totality* of the circumstances." *State v. Maready*, 362 N.C. 614, 619, 669 S.E.2d 564, 567 (2008).

In its order, the trial court made the following findings pertinent to whether Deputy Coleman had reasonable suspicion to stop defendant:

4. Deputy Coleman thereafter encountered a white Chevrolet Metro operating on Garland Highway with dim tail lights.

5. While following [defendant's] vehicle for three fourths of a mile to one mile, Deputy Coleman noticed the vehicle weaving erratically within its travel lane, weaving from the "fog line" to the center line several times.

6. Deputy Coleman described the movements of the vehicle as "like a ball bouncing in a small room."

7. Deputy Coleman observed that traffic was heavy in the opposite direction of the followed vehicle due to traffic going to a popular local lake.

8. Deputy Coleman became concerned that the driver's ability to control the vehicle was impaired.

9. Deputy Coleman became concerned for the safety of the oncoming traffic traveling in the direction opposite that of the followed vehicle after observing oncoming traffic taking evasive action by moving to the far right.

Since defendant does not challenge these findings of fact on appeal, they are " 'presumed to be correct.' " *State v. Pickard*, 178 N.C. App. 330, 334, 631 S.E.2d 203, 206 (2006) (quoting *Inspirational Network, Inc. v. Combs*, 131 N.C. App. 231, 235, 506 S.E.2d 754, 758 (1998)). Based on these findings of fact, the trial court concluded that "[t]he weaving within the lane, it's character as 'bouncing', the dim lights, the evasive movements of the oncoming traffic when viewed through the eyes of a reasonable cautious officer, guided by his training and experience, taken in total provide at least a minimal level of objective justification for stopping the vehicle." The court, therefore, determined that Deputy Coleman had a reasonable, articulable suspicion to conduct an investigative stop of defendant's vehicle.

Defendant contends that the trial court's findings are insufficient to support the trial court's conclusion. He argues that, at most, the court's findings establish that Deputy Coleman observed defendant weaving within his own lane of travel, which was insufficient to support the traffic stop.

This Court has previously held that a "defendant's weaving within his lane, standing alone, is insufficient to support a reasonable suspicion that defendant was driving under the influence of alcohol." *State*

*v. Fields*, 195 N.C. App. 740, 746, 673 S.E.2d 765, 769 (2009). In this case, however, the trial court did not find only that defendant was weaving in his lane, but rather that defendant's driving was " 'like a ball bouncing in a small room.' " The driving was so erratic that the officer observed other drivers—in heavy traffic—taking evasive maneuvers to avoid defendant's car.

Defendant's conduct in this case was distinguishable from that of the defendants in *Fields* and *State v. Peele*, 196 N.C. App. 668, 675 S.E.2d 682 (2009), the cases upon which defendant relies. In *Fields*, this Court concluded that there was insufficient evidence to support a traffic stop when the officer attempted to justify his stop based only on the fact that he saw the defendant weave within his lane three times over one and a half miles. 195 N.C. App. at 746, 673 S.E.2d at 769. In *Peele*, this Court found that an unreliable anonymous tip coupled with the defendant's weaving a single time did not create a reasonable suspicion to justify the stop. 196 N.C. App. at 671, 675 S.E.2d at 685. Thus, neither *Fields* nor *Peele* involved the level of erratic driving and potential danger to other drivers that was involved in this case.

We hold the trial court properly concluded that Officer Coleman had the "minimal level of objective justification" that our courts have required to constitute reasonable suspicion. *Watkins*, 337 N.C. at 442, 446 S.E.2d at 70. Therefore, the stop was proper, and the trial court properly denied defendant's motion to suppress.

No error.

Judges STEELMAN and BEASLEY concur.