BERGER, Judge.
 

 *330
 
 Eugene Oliver Jackson ("Defendant") was indicted for felony possession of cocaine and driving without an operator's license. Defendant filed a motion to suppress, arguing the arresting officer lacked reasonable suspicion to justify the traffic stop. Defendant's motion to suppress was denied. On June 13, 2017, Defendant pleaded guilty to felony possession of a schedule II substance and driving without an operator's license. Defendant appeals arguing that his motion to suppress should have been granted because the arresting officer did not have reasonable suspicion to justify extending the traffic stop. Defendant also contends that the trial court erred in concluding the contraband seized from Defendant's person would have been ultimately or inevitably discovered through lawful means. We disagree.
 

 Facts and Procedural Background
 

 In the order denying Defendant's motion to suppress, the trial court found: On February 14, 2015, City of Winston-Salem Police Department Corporal J.B. Keltner ("Corporal Keltner"), who had more than sixteen years of experience in law enforcement, including training in narcotics investigation and highway interdiction, was on the lookout for a gold Kia sedan in connection with an earlier incident that occurred at the Green Valley Inn. As Corporal Keltner was monitoring the intersection of Patterson Avenue and Germanton Road, he observed a Kia sedan drive through the red light on Patterson Avenue approaching Highway 52 North. Corporal Keltner conducted a traffic stop. The Kia, driven by Defendant, stopped on the right hand side of the highway, but with its two left tires on the outside right fog line. Based on Corporal Keltner's training and experience, persons transporting narcotics sometimes engaged in the practice of "white lining," or parking on the white fog line to make approaching the vehicle and conducting investigations more difficult.
 

 Corporal Keltner approached the passenger side of the vehicle, and immediately "observed a 24-oz. beer, open, in the center console." Defendant then rolled down the window and Corporal Keltner explained that he stopped the vehicle for running the red light, to which Defendant made spontaneous comments about a friend running off and not knowing the friend's location. Corporal Keltner then asked for his license and registration. Defendant responded that he did not have a license, but
 
 *331
 
 handed Corporal Keltner a Pennsylvania State I.D. card with his right hand, which was "shaky."
 

 After noticing that Defendant "had red glassy eyes" and "a moderate odor of alcohol coming from the car," Corporal Keltner asked Defendant to exit the car so that he could search the car and have Defendant perform sobriety tests. Before searching the car, Corporal Keltner frisked Defendant for weapons. Upon searching the vehicle, Corporal Keltner found no further evidence or
 
 *660
 
 contraband. As Corporal Keltner returned to his police car to check the status of Defendant's license and for any outstanding warrants, "[D]efendant spontaneously handed" Corporal Keltner his car keys. Because it was cold outside, Corporal Keltner permitted Defendant to sit in the back of the patrol car un-handcuffed while he ran license and warrant checks. Corporal Keltner determined Defendant's license was expired, the Kia was not registered to Defendant, and Defendant had no outstanding warrants.
 

 While Corporal Keltner was sitting with Defendant in his patrol car, Defendant voluntarily "made a variety of spontaneous statements to Corp[oral] Keltner about his missing friend, first saying he could not remember the friend's name, then that his name was "Ty," then "Ty Payne," and then that "Ty was in fact his brother-in-law." Defendant further asked if "he could give him a ride back to the Green Valley Inn after the traffic stop was finished."
 

 After concluding his license and warrant check, Corporal Keltner conducted standardized field sobriety tests, which were performed to his satisfaction. Corporal Keltner then requested and received consent to search Defendant and found powder cocaine and crack cocaine in Defendant's pockets. Defendant was arrested for possession of cocaine and driving without an operator's license.
 

 The trial court further found that Corporal Keltner would not have allowed Defendant to drive away from the traffic stop because he had no driver's license; and he would have searched Defendant's person before transporting Defendant in his patrol car to any other location or prior to arresting him. Corporal Keltner testified that it was his practice to search all persons who rode in his patrol car, even if not under arrest, for safety reasons and to avoid unwittingly transporting contraband.
 

 Defendant was indicted for possession of cocaine and driving without an operator's license, and in February 2016, he filed a motion to suppress. The trial court denied Defendant's motion to suppress in an order filed on July 24, 2017. On June 13, 2017, Defendant pleaded guilty to felony possession of a schedule II substance and driving without an
 
 *332
 
 operator's license. Defendant was placed on supervised probation for eighteen months.
 

 Defendant appealed the trial court's denial of his Motion to Suppress, but did not give notice of his appeal from the underlying judgment. As a result, Defendant petitioned this Court on May 23, 2018 for a writ of certiorari in light of the defect in his notice of appeal. Defendant asserts that the trial court erred in denying the Motion to Suppress because the arresting officer's reason for extending the traffic stop failed to distinguish Defendant from other innocent travelers and did not establish reasonable suspicion. We grant Defendant's petition for a writ of certiorari, and address the merits.
 

 Analysis
 

 Defendant argues that Corporal Keltner lacked reasonable suspicion to extend the stop after determining Defendant was not intoxicated. He further argues that the State failed to prove discovery of the cocaine was inevitable. We disagree.
 

 Our review of a trial court's denial of a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law."
 
 State v. Cooke
 
 ,
 
 306 N.C. 132
 
 , 134,
 
 291 S.E.2d 618
 
 , 619 (1982). "The conclusions of law ... are reviewed
 
 de novo
 
 ."
 
 State v. Downey
 
 , --- N.C. App. ----, ----,
 
 796 S.E.2d 517
 
 , 519 (2017),
 
 aff'd
 
 ,
 
 370 N.C. 507
 
 ,
 
 809 S.E.2d 566
 
 (2018).
 

 Here, the trial court's findings of fact were supported by competent evidence. Based upon those findings, the trial court concluded as a matter of law that "the purpose of the traffic stop was concluded after the field sobriety tests were administered, and before Corp[oral] Keltner requested consent to search [D]efendant's person." However, "based on the totality of the circumstances Corpor[al] Keltner had reasonable articulable suspicion to extend the stop for the purpose of asking for consent to search the [D]efendant's person." The factor's supporting
 
 *661
 
 Corporal Keltner's reasonable suspicion to extend the stop for the purpose of asking consent to search Defendant's person included:
 

 [D]efendant's nervousness and shakiness, the vehicle being registered to a third party not present, the [D]efendant presenting an out-of-state identification; the [D]efendant giving conflicting information about where he lived; the [D]efendant's repeated offering of unsolicited information
 
 *333
 
 about a missing friend and conflicting information about the name of the friend while ultimately volunteering that the friend was in fact his brother-in-law; and the [D]efendant's parking the vehicle on the fog line where officers could not approach the driver's side of the vehicle without having to stand in the lane of travel.
 

 The trial court also concluded that Defendant's "consent to the search of his person was voluntarily given," and that Defendant "suffered no constitutional violations as a result of this stop and search." Moreover, the trial court stated that, even if Defendant had not consented to the search of his person,
 

 the drugs located on [D]efendant's person would have been inevitably discovered: if Corp[oral] Keltner had merely written [D]efendant a citation and given [D]efendant the ride he had requested following the completion of the traffic stop, and searched him prior to that ride as was Corp[oral] Keltner's practice, the drugs would have been located at that point; or, they would have been located pursuant to a search incident to arrest for No Operator's License.
 

 I.
 
 Reasonable Suspicion
 

 The Fourth Amendment of the United States protects individuals "against unreasonable searches and seizures."
 
 State v. Barnard
 
 ,
 
 362 N.C. 244
 
 , 246,
 
 658 S.E.2d 643
 
 , 645 (2008) (citing U.S. Const. amend. IV. and N.C. Const. art. I, § 20 ). A traffic stop is constitutional if the officer has a "reasonable, articulable suspicion that criminal activity is afoot."
 
 Id.
 
 at 246,
 
 658 S.E.2d at 645
 
 (quoting
 
 Illinois v. Wardlow
 
 ,
 
 528 U.S. 119
 
 , 123,
 
 120 S.Ct. 673
 
 , 675,
 
 145 L.Ed.2d 570
 
 , 576 (2000) ). "[R]easonable suspicion is the necessary standard for traffic stops, regardless of whether the traffic violation was readily observed or merely suspected."
 
 State v. Bullock
 
 ,
 
 370 N.C. 256
 
 , 261,
 
 805 S.E.2d 671
 
 , 676 (2017) (citation and quotation marks omitted).
 

 Reasonable suspicion is a "less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence."
 
 Barnard
 
 ,
 
 362 N.C. at 247
 
 ,
 
 658 S.E.2d at 645
 
 (quoting
 
 Wardlow
 
 ,
 
 528 U.S. at 123
 
 ,
 
 120 S.Ct. at 675
 
 ,
 
 145 L.Ed.2d at
 
 576 ). Reasonable suspicion requires "a minimal level of objective justification, something more than an unparticularized suspicion or hunch."
 
 State v. Fields
 
 ,
 
 219 N.C. App. 385
 
 , 387,
 
 723 S.E.2d 777
 
 , 779 (2012) (citation and quotation marks omitted). "[T]he stop [must] ... be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through
 
 *334
 
 the eyes of a reasonable, cautious officer, guided by his experience and training."
 
 State v. Styles
 
 ,
 
 362 N.C. 412
 
 , 414,
 
 665 S.E.2d 438
 
 , 439-40 (2008) (citation omitted). "[T]he overarching inquiry when assessing reasonable suspicion is always based on the
 
 totality
 
 of the circumstances."
 
 Fields
 
 ,
 
 219 N.C. App. at 387
 
 ,
 
 723 S.E.2d at 779
 
 (citation and quotation marks omitted).
 

 In the present case, Corporal Keltner had reasonable suspicion to conduct a traffic stop because he had witnessed Defendant run a red light. Defendant concedes the initial reason for stopping Defendant was lawful, but contends Corporal Keltner did not have reasonable suspicion to search Defendant's person once the purpose of the traffic stop was concluded. However, Corporal Keltner did not need reasonable suspicion to extend the stop because probable cause developed to justify Defendant's arrest.
 

 Even if we were to accept Defendant's argument that Corporal Keltner lacked reasonable suspicion to extend the stop, the trial court's ultimate ruling on Defendant's motion to suppress the admission of cocaine is properly upheld.
 
 See
 

 State v. Hester
 
 , --- N.C. App., ----, ---- - ----,
 
 803 S.E.2d 8
 
 , 15-16 (2017) (citations and quotation marks omitted) ("A correct decision of a lower court will
 
 *662
 
 not be disturbed because a wrong or insufficient or superfluous reason is assigned.").
 

 Based on the trial court's findings and Corporal Keltner's testimony at the suppression hearing and at trial, two intervening events, i.e., discovery of the open container and determination that Defendant was driving the vehicle without an operator's license, provided Corporal Keltner probable cause to search Defendant's person and arrest him.
 

 II.
 
 Probable Cause
 

 An officer may lawfully "arrest without a warrant any person who the officer has probable cause to believe" has committed a criminal offense. N.C. Gen. Stat. § 15A-401(b)(2) (2017).
 

 Probable cause is defined as those facts and circumstances within an officer's knowledge ... which are sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense. The Supreme Court has explained that probable cause does not demand any showing that such a belief be correct or more likely true than false. A practical, nontechnical probability that incriminating evidence is involved is all that is required. A probability of illegal activity, rather than a
 
 prima facie
 
 showing of illegal activity or proof of guilt, is sufficient.
 

 *335
 

 State v. Robinson
 
 ,
 
 221 N.C. App. 266
 
 , 272-73,
 
 727 S.E.2d 712
 
 , 717 (2012) (
 
 purgandum
 

 [1]
 
 ). Additionally, "[p]robable cause is defined as those facts and circumstances within an officer's knowledge and of which he had reasonably trustworthy information[,] which are sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense."
 
 State v. Biber
 
 ,
 
 365 N.C. 162
 
 , 168-69,
 
 712 S.E.2d 874
 
 , 879 (2011) (citation and quotation marks omitted).
 

 To determine whether an officer had probable cause for an arrest, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause. Because probable cause deals with probabilities and depends on the totality of the circumstances, it is a fluid concept that is not readily, or even usefully, reduced to a neat set of legal rules. It requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. Probable cause is not a high bar.
 

 District of Columbia v. Wesby
 
 , --- U.S. ----,
 
 138 S.Ct. 577
 
 ,
 
 199 L.Ed.2d 453
 
 (2018) (citations and quotation marks omitted).
 

 Here, two intervening events gave Corporal Keltner probable cause to search and arrest Defendant. When Corporal Keltner approached Defendant's vehicle he "immediately noticed a[n] [open] 24-ounce Bush [sic] beer can that was sitting in the center console of the drink holder." Defendant then rolled down the window and Corporal Keltner detected an odor of alcohol, observed Defendant's glassy eyes, and explained that he stopped the car for running the red light, to which Defendant made spontaneous comments about a friend of his having run off and not knowing where the friend was. Corporal Keltner then asked for his license and registration. Defendant responded that he did not have a license and handed Corporal Keltner a Pennsylvania State I.D. card. Corporal Keltner determined that Defendant's license was expired and Defendant had no outstanding warrants.
 

 In light of these facts, Corporal Keltner could have arrested Defendant for either driving with an open container or driving without
 
 *336
 
 a valid operator's license at that time.
 
 N.C. Gen. Stat. § 20-138.7
 
 (a)(1) (2017) ;
 
 N.C. Gen. Stat. § 20-35
 
 (2017). The probable cause to arrest justified extension of the encounter between Corporal Keltner and Defendant. Corporal Keltner merely asked for consent to do that which by law he was authorized to do: conduct a search of Defendant's person.
 
 *663
 
 "An officer may conduct a warrantless search incident to a lawful arrest. A search is considered incident to arrest even if conducted prior to formal arrest if probable cause to arrest exists prior to the search and the evidence seized is not necessary to establish that probable cause."
 
 Robinson
 
 ,
 
 221 N.C. App. at 276
 
 ,
 
 727 S.E.2d at 719
 
 (
 
 purgandum
 
 ).
 

 If an officer has probable cause to arrest a suspect and as incident to that arrest would be entitled to make a reasonable search of his person, we see no value in a rule which invalidates the search merely because it precedes actual arrest. The justification for the search incident to arrest is the need for immediate action to protect the arresting officer from the use of weapons and to prevent destruction of evidence of the crime. These considerations are rendered no less important by the postponement of the arrest.
 

 State v. Wooten
 
 ,
 
 34 N.C. App. 85
 
 , 89-90,
 
 237 S.E.2d 301
 
 , 305 (1977).
 

 In the present case, because an independent basis for probable cause existed prior to the search of Defendant's person and because the independent basis was separate and apart from discovery of the cocaine, the cocaine found on Defendant's person was unnecessary to establish probable cause for arrest.
 

 Moreover, Corporal Keltner testified that prior to asking Defendant for consent to search his person, he believed that Defendant was engaging in some sort of criminal activity other than just running a red light or impaired driving, or driving without a valid operator's license. Corporal Keltner testified that:
 

 a lot of times individuals that are involved in some sort of criminal activity or have some type of contraband in their car will commonly do what we refer to in highway interdiction as white line the officer whenever they stopped, because a lot of officers traditionally will make their approach to the vehicle on the driver's side of the vehicle, and by pulling over there on the fog line, would expose the officer to danger, walking up in the travel lane and sometimes force the officer to change the way he does
 
 *337
 
 the traffic stop, or just go ahead and hurry them on their way just to get out of that danger ...
 

 [W]hen [Defendant] handed me his Pennsylvania ... I.D. card, that his left -- or his right hand, rather, was shaking uncontrollably whenever he handed the license to me. I know, based on my training and experience, that individuals that are involved in criminal activity commonly will shake uncontrollably like that whenever they hand me their documentation that I have asked for in a traffic stop.
 

 ...
 

 When he was sitting in the back of my patrol vehicle, just the spontaneous conversation that he initiated with me in regards to an event that had transpired prior to me stopping him and this individual that was involved in the -- the incident just seemed very strange to me that he's providing me with information that I hadn't asked for. And I noticed also that when he was talking to me that he was talking very, very rapidly. And I know both of these things, based on my training and experience, are things that are indications of people who are involved in criminal activities, are excessively nervous. ...
 

 When I ran the registration, it was a North Carolina license plate that was displayed on this vehicle, I found that the vehicle was registered to a third-party female who was not present in the vehicle. And I know, based on my training and experience that very commonly individuals that are involved in criminal activities will ... utilize a vehicle that's registered to a third party.
 

 Thus, even though the trial court concluded that the traffic stop ended after the sobriety tests, Corporal Keltner developed probable cause to arrest Defendant and then to search Defendant's person. Because the search of Defendant's person was incident to a lawful arrest, the trial court's ruling on Defendant's motion to suppress was proper.
 

 III.
 
 Consent
 

 Defendant also contends his consent to the search was invalid because Corporal Keltner had not yet returned his car keys
 
 *664
 
 and I.D. card, and thus Defendant was not free to leave. Defendant relies on
 
 State v. Jackson
 
 ,
 
 199 N.C. App. 236
 
 ,
 
 681 S.E.2d 492
 
 (2009), which held that a defendant's consent to search is invalid when it is tainted by the illegality of an extended detention.
 
 *338
 
 Under the search incident to arrest exception, consent to search is not required because "[a]n officer may conduct a warrantless search incident to a lawful arrest."
 
 State v. Chadwick
 
 ,
 
 149 N.C. App. 200
 
 , 205,
 
 560 S.E.2d 207
 
 , 211 (2002) (citations omitted). "A search incident to lawful arrest is limited in scope to the area from which the arrested person might have obtained a weapon or some item that could have been used as evidence against him. The parameters of search incident to arrest in a given case depend upon the particular facts and circumstances."
 
 State v. Jones
 
 ,
 
 221 N.C. App. 236
 
 , 240,
 
 725 S.E.2d 910
 
 , 913 (2012) (citation omitted).
 

 Because probable cause existed, Defendant's consent was unnecessary for Corporal Keltner to conduct the search. No additional justification is needed beyond the probable cause required for the arrest. Additionally, the scope of the search was limited. Corporal Keltner conducted an outer clothing pat-down of Defendant's person. As a result of the pat-down, Corporal Keltner located powder cocaine and crack cocaine in Defendant's jeans. Once Corporal Keltner secured the cocaine he placed Defendant under arrest and concluded the search of Defendant's person. Thus, because Corporal Keltner had probable cause to arrest, Defendant's consent was not required to conduct a search incident to lawful arrest.
 

 IV.
 
 Inevitable Discovery
 

 Defendant further argues the trial court erred in alternatively concluding that discovery of the cocaine was inevitable. Even if we assume the search of Defendant was unlawful, which it was not, discovery of the illegal contraband on Defendant's person was inevitable.
 

 "The standard of review for alleged violations of constitutional rights is
 
 de novo
 
 ."
 
 State v. Graham
 
 ,
 
 200 N.C. App. 204
 
 , 214,
 
 683 S.E.2d 437
 
 , 444 (2009). Under the exclusionary rule, evidence obtained by unreasonable search and seizure is generally inadmissible in a criminal prosecution.
 
 State v. Garner
 
 ,
 
 331 N.C. 491
 
 , 505-06,
 
 417 S.E.2d 502
 
 , 510 (1992).
 

 However, "[u]nder the inevitable discovery doctrine, evidence which is illegally obtained can still be admitted into evidence as an exception to the exclusionary rule when the information ultimately or inevitably would have been discovered by lawful means. ... Under this doctrine, the prosecution has the burden of proving that the evidence, even though obtained through an illegal search, would have been discovered anyway by independent lawful means."
 
 State v. Harris
 
 ,
 
 157 N.C. App. 647
 
 , 654,
 
 580 S.E.2d 63
 
 , 67 (2003) (
 
 purgandum
 
 ). "The State need not prove an ongoing independent investigation; we use a flexible
 
 *339
 
 case-by-case approach in determining inevitability."
 
 State v. Larkin
 
 ,
 
 237 N.C. App. 335
 
 , 343,
 
 764 S.E.2d 681
 
 , 687 (2014) (citation omitted). Moreover, "if the State carries its burden and proves inevitable discovery by separate, independent means, thus leaving the State in no better and no worse position, any question of good faith, bad faith, mistake or inadvertence is simply irrelevant."
 
 Garner
 
 ,
 
 331 N.C. at 508
 
 ,
 
 417 S.E.2d at 511
 
 .
 

 In the present case, Corporal Keltner testified that had he merely issued Defendant a citation for driving with no operator's license, he "would [not] have allowed the [D]efendant to have driven off" from the traffic stop because "he was not licensed to operate a motor vehicle." Corporal Keltner further testified that he would have searched Defendant before giving him a ride or transporting him to jail because of his practice of searching everyone he transports in his patrol car. Also, Defendant repeatedly asked Corporal Keltner "if [h]e could give him a ride back over to the Green Valley Motel and drop him off."
 

 Here, the State established by a preponderance of the evidence that the cocaine would have been inevitably discovered because Corporal Keltner would have searched Defendant's person for weapons or contraband prior to transporting him to another location or jail.
 

 *665
 

 Conclusion
 

 For the reasons stated above, the trial court properly denied Defendant's motion to suppress.
 

 AFFIRMED.
 

 Judges DIETZ and TYSON concur.
 

 [1]
 

 Our shortening of the Latin phrase "
 
 Lex purgandum est
 
 ." This phrase, which roughly translates "that which is superfluous must be removed from the law," was used by Dr. Martin Luther during the Heidelberg Disputation on April 26, 1518 in which Dr. Luther elaborated on his theology of sovereign grace. Here, we use
 
 purgandum
 
 to simply mean that there has been the removal of superfluous items, such as quotation marks, ellipses, brackets, citations, and the like, for ease of reading.