IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-417

 Filed: 6 November 2018

Forsyth County, No. 15CRS051445

STATE OF NORTH CAROLINA

 v.

EUGENE OLIVER JACKSON, Defendant.

 Appeal by defendant from judgment entered 13 June 2017 by Judge Richard

S. Gottlieb in Forsyth County Superior Court. Heard in the Court of Appeals 2

October 2018.

 Attorney General Joshua H. Stein, by Assistant Attorney General Jarrett W.
 McGowan, for the State.

 David Weiss for defendant.

 BERGER, Judge.

 Eugene Oliver Jackson (“Defendant”) was indicted for felony possession of

cocaine and driving without an operator’s license. Defendant filed a motion to

suppress, arguing the arresting officer lacked reasonable suspicion to justify the

traffic stop. Defendant’s motion to suppress was denied. On June 13, 2017,

Defendant pleaded guilty to felony possession of a schedule II substance and driving

without an operator’s license. Defendant appeals arguing that his motion to suppress

should have been granted because the arresting officer did not have reasonable
 STATE V. JACKSON

 Opinion of the Court

suspicion to justify extending the traffic stop. Defendant also contends that the trial

court erred in concluding the contraband seized from Defendant’s person would have

been ultimately or inevitably discovered through lawful means. We disagree.

 Facts and Procedural Background

 In the order denying Defendant’s motion to suppress, the trial court found: On

February 14, 2015, City of Winston-Salem Police Department Corporal J.B. Keltner

(“Corporal Keltner”), who had more than sixteen years of experience in law

enforcement, including training in narcotics investigation and highway interdiction,

was on the lookout for a gold Kia sedan in connection with an earlier incident that

occurred at the Green Valley Inn. As Corporal Keltner was monitoring the

intersection of Patterson Avenue and Germanton Road, he observed a Kia sedan drive

through the red light on Patterson Avenue approaching Highway 52 North. Corporal

Keltner conducted a traffic stop. The Kia, driven by Defendant, stopped on the right

hand side of the highway, but with its two left tires on the outside right fog line.

Based on Corporal Keltner’s training and experience, persons transporting narcotics

sometimes engaged in the practice of “white lining,” or parking on the white fog line

to make approaching the vehicle and conducting investigations more difficult.

 Corporal Keltner approached the passenger side of the vehicle, and

immediately “observed a 24-oz. beer, open, in the center console.” Defendant then

rolled down the window and Corporal Keltner explained that he stopped the vehicle

 -2-
 STATE V. JACKSON

 Opinion of the Court

for running the red light, to which Defendant made spontaneous comments about a

friend running off and not knowing the friend’s location. Corporal Keltner then asked

for his license and registration. Defendant responded that he did not have a license,

but handed Corporal Keltner a Pennsylvania State I.D. card with his right hand,

which was “shaky.”

 After noticing that Defendant “had red glassy eyes” and “a moderate odor of

alcohol coming from the car,” Corporal Keltner asked Defendant to exit the car so

that he could search the car and have Defendant perform sobriety tests. Before

searching the car, Corporal Keltner frisked Defendant for weapons. Upon searching

the vehicle, Corporal Keltner found no further evidence or contraband. As Corporal

Keltner returned to his police car to check the status of Defendant’s license and for

any outstanding warrants, “[D]efendant spontaneously handed” Corporal Keltner his

car keys. Because it was cold outside, Corporal Keltner permitted Defendant to sit

in the back of the patrol car un-handcuffed while he ran license and warrant checks.

Corporal Keltner determined Defendant’s license was expired, the Kia was not

registered to Defendant, and Defendant had no outstanding warrants.

 While Corporal Keltner was sitting with Defendant in his patrol car,

Defendant voluntarily “made a variety of spontaneous statements to Corp[oral]

Keltner about his missing friend, first saying he could not remember the friend’s

name, then that his name was “Ty,” then “Ty Payne,” and then that “Ty was in fact

 -3-
 STATE V. JACKSON

 Opinion of the Court

his brother-in-law.” Defendant further asked if “he could give him a ride back to the

Green Valley Inn after the traffic stop was finished.”

 After concluding his license and warrant check, Corporal Keltner conducted

standardized field sobriety tests, which were performed to his satisfaction. Corporal

Keltner then requested and received consent to search Defendant and found powder

cocaine and crack cocaine in Defendant’s pockets. Defendant was arrested for

possession of cocaine and driving without an operator’s license.

 The trial court further found that Corporal Keltner would not have allowed

Defendant to drive away from the traffic stop because he had no driver’s license; and

he would have searched Defendant’s person before transporting Defendant in his

patrol car to any other location or prior to arresting him. Corporal Keltner testified

that it was his practice to search all persons who rode in his patrol car, even if not

under arrest, for safety reasons and to avoid unwittingly transporting contraband.

 Defendant was indicted for possession of cocaine and driving without an

operator’s license, and in February 2016, he filed a motion to suppress. The trial

court denied Defendant’s motion to suppress in an order filed on July 24, 2017. On

June 13, 2017, Defendant pleaded guilty to felony possession of a schedule II

substance and driving without an operator’s license. Defendant was placed on

supervised probation for eighteen months.

 -4-
 STATE V. JACKSON

 Opinion of the Court

 Defendant appealed the trial court’s denial of his Motion to Suppress, but did

not give notice of his appeal from the underlying judgment. As a result, Defendant

petitioned this Court on May 23, 2018 for a writ of certiorari in light of the defect in

his notice of appeal. Defendant asserts that the trial court erred in denying the

Motion to Suppress because the arresting officer’s reason for extending the traffic

stop failed to distinguish Defendant from other innocent travelers and did not

establish reasonable suspicion. We grant Defendant’s petition for a writ of certiorari,

and address the merits.

 Analysis

 Defendant argues that Corporal Keltner lacked reasonable suspicion to extend

the stop after determining Defendant was not intoxicated. He further argues that

the State failed to prove discovery of the cocaine was inevitable. We disagree.

 Our review of a trial court’s denial of a motion to suppress is “strictly limited

to determining whether the trial judge’s underlying findings of fact are supported by

competent evidence, in which event they are conclusively binding on appeal, and

whether those factual findings in turn support the judge’s ultimate conclusions of

law.” State v. Cooke, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). “The conclusions

of law . . . are reviewed de novo.” State v. Downey, ___ N.C. App. ___, ___, 796 S.E.2d

517, 519 (2017), aff’d, 370 N.C. 507, 809 S.E.2d 566 (2018).

 -5-
 STATE V. JACKSON

 Opinion of the Court

 Here, the trial court’s findings of fact were supported by competent evidence.

Based upon those findings, the trial court concluded as a matter of law that “the

purpose of the traffic stop was concluded after the field sobriety tests were

administered, and before Corp[oral] Keltner requested consent to search

[D]efendant’s person.” However, “based on the totality of the circumstances

Corpor[al] Keltner had reasonable articulable suspicion to extend the stop for the

purpose of asking for consent to search the [D]efendant’s person.” The factor’s

supporting Corporal Keltner’s reasonable suspicion to extend the stop for the purpose

of asking consent to search Defendant’s person included:

 [D]efendant’s nervousness and shakiness, the vehicle being
 registered to a third party not present, the [D]efendant
 presenting an out-of-state identification; the [D]efendant
 giving conflicting information about where he lived; the
 [D]efendant’s repeated offering of unsolicited information
 about a missing friend and conflicting information about
 the name of the friend while ultimately volunteering that
 the friend was in fact his brother-in-law; and the
 [D]efendant’s parking the vehicle on the fog line where
 officers could not approach the driver’s side of the vehicle
 without having to stand in the lane of travel.

 The trial court also concluded that Defendant’s “consent to the search of his

person was voluntarily given,” and that Defendant “suffered no constitutional

violations as a result of this stop and search.” Moreover, the trial court stated that,

even if Defendant had not consented to the search of his person,

 the drugs located on [D]efendant’s person would have been
 inevitably discovered: if Corp[oral] Keltner had merely
 written [D]efendant a citation and given [D]efendant the

 -6-
 STATE V. JACKSON

 Opinion of the Court

 ride he had requested following the completion of the traffic
 stop, and searched him prior to that ride as was Corp[oral]
 Keltner’s practice, the drugs would have been located at
 that point; or, they would have been located pursuant to a
 search incident to arrest for No Operator’s License.

I. Reasonable Suspicion

 The Fourth Amendment of the United States protects individuals “against

unreasonable searches and seizures.” State v. Barnard, 362 N.C. 244, 246, 658 S.E.2d

643, 645 (2008) (citing U.S. Const. amend. IV. and N.C. Const. art. I, § 20). A traffic

stop is constitutional if the officer has a “reasonable, articulable suspicion that

criminal activity is afoot.” Id. at 246, 658 S.E.2d at 645 (quoting Illinois v. Wardlow,

528 U.S. 119, 123, 145 L. Ed. 2d 570, 576 (2000)). “[R]easonable suspicion is the

necessary standard for traffic stops, regardless of whether the traffic violation was

readily observed or merely suspected.” State v. Bullock, 370 N.C. 256, 261, 805 S.E.2d

671, 676 (2017) (citation and quotation marks omitted).

 Reasonable suspicion is a “less demanding standard than probable cause and

requires a showing considerably less than preponderance of the evidence.” Barnard,

362 N.C. at 247, 658 S.E.2d at 645 (quoting Wardlow, 528 U.S. at 123, 145 L. Ed. 2d

at 576). Reasonable suspicion requires “a minimal level of objective justification,

something more than an unparticularized suspicion or hunch.” State v. Fields, 219

N.C. App. 385, 387, 723 S.E.2d 777, 779 (2012) (citation and quotation marks

omitted). “[T]he stop [must] . . . be based on specific and articulable facts, as well as

the rational inferences from those facts, as viewed through the eyes of a reasonable,

 -7-
 STATE V. JACKSON

 Opinion of the Court

cautious officer, guided by his experience and training.” State v. Styles, 362 N.C. 412,

414, 665 S.E.2d 438, 439-40 (2008) (citation omitted). “[T]he overarching inquiry

when assessing reasonable suspicion is always based on the totality of the

circumstances.” Fields, 219 N.C. App. at 387, 723 S.E.2d at 779 (citation and

quotation marks omitted).

 In the present case, Corporal Keltner had reasonable suspicion to conduct a

traffic stop because he had witnessed Defendant run a red light. Defendant concedes

the initial reason for stopping Defendant was lawful, but contends Corporal Keltner

did not have reasonable suspicion to search Defendant’s person once the purpose of

the traffic stop was concluded. However, Corporal Keltner did not need reasonable

suspicion to extend the stop because probable cause developed to justify Defendant’s

arrest.

 Even if we were to accept Defendant’s argument that Corporal Keltner lacked

reasonable suspicion to extend the stop, the trial court’s ultimate ruling on

Defendant’s motion to suppress the admission of cocaine is properly upheld. See State

v. Hester, ___ N.C. App., ___, ___, 803 S.E.2d 8, 15-16 (2017) (citations and quotation

marks omitted) (“A correct decision of a lower court will not be disturbed because a

wrong or insufficient or superfluous reason is assigned.”).

 Based on the trial court’s findings and Corporal Keltner’s testimony at the

suppression hearing and at trial, two intervening events, i.e., discovery of the open

 -8-
 STATE V. JACKSON

 Opinion of the Court

container and determination that Defendant was driving the vehicle without an

operator’s license, provided Corporal Keltner probable cause to search Defendant’s

person and arrest him.

II. Probable Cause

 An officer may lawfully “arrest without a warrant any person who the officer

has probable cause to believe” has committed a criminal offense. N.C. Gen. Stat.

§ 15A-401(b)(2) (2017).

 Probable cause is defined as those facts and circumstances
 within an officer’s knowledge . . . which are sufficient to
 warrant a prudent man in believing that the suspect had
 committed or was committing an offense. The Supreme
 Court has explained that probable cause does not demand
 any showing that such a belief be correct or more likely true
 than false. A practical, nontechnical probability that
 incriminating evidence is involved is all that is required. A
 probability of illegal activity, rather than a prima facie
 showing of illegal activity or proof of guilt, is sufficient.

State v. Robinson, 221 N.C. App. 266, 272-73, 727 S.E.2d 712, 717 (2012)

(purgandum1). Additionally, “[p]robable cause is defined as those facts and

circumstances within an officer’s knowledge and of which he had reasonably

trustworthy information[,] which are sufficient to warrant a prudent man in believing

 1 Our shortening of the Latin phrase “Lex purgandum est.” This phrase, which roughly
translates “that which is superfluous must be removed from the law,” was used by Dr. Martin Luther
during the Heidelberg Disputation on April 26, 1518 in which Dr. Luther elaborated on his theology
of sovereign grace. Here, we use purgandum to simply mean that there has been the removal of
superfluous items, such as quotation marks, ellipses, brackets, citations, and the like, for ease of
reading.

 -9-
 STATE V. JACKSON

 Opinion of the Court

that the suspect had committed or was committing an offense.” State v. Biber, 365

N.C. 162, 168-69, 712 S.E.2d 874, 879 (2011) (citation and quotation marks omitted).

 To determine whether an officer had probable cause
 for an arrest, we examine the events leading up to the
 arrest, and then decide whether these historical facts,
 viewed from the standpoint of an objectively reasonable
 police officer, amount to probable cause. Because probable
 cause deals with probabilities and depends on the totality
 of the circumstances, it is a fluid concept that is not readily,
 or even usefully, reduced to a neat set of legal rules. It
 requires only a probability or substantial chance of
 criminal activity, not an actual showing of such activity.
 Probable cause is not a high bar.

District of Columbia v. Wesby, ___ U.S. ___, ___, 199 L. Ed. 2d 453 (2018) (citations

and quotation marks omitted).

 Here, two intervening events gave Corporal Keltner probable cause to search

and arrest Defendant. When Corporal Keltner approached Defendant’s vehicle he

“immediately noticed a[n] [open] 24-ounce Bush [sic] beer can that was sitting in the

center console of the drink holder.” Defendant then rolled down the window and

Corporal Keltner detected an odor of alcohol, observed Defendant’s glassy eyes, and

explained that he stopped the car for running the red light, to which Defendant made

spontaneous comments about a friend of his having run off and not knowing where

the friend was. Corporal Keltner then asked for his license and registration.

Defendant responded that he did not have a license and handed Corporal Keltner a

Pennsylvania State I.D. card. Corporal Keltner determined that Defendant’s license

was expired and Defendant had no outstanding warrants.

 - 10 -
 STATE V. JACKSON

 Opinion of the Court

 In light of these facts, Corporal Keltner could have arrested Defendant for

either driving with an open container or driving without a valid operator’s license at

that time. N.C. Gen. Stat. § 20-138.7(a)(1) (2017); N.C. Gen. Stat. § 20-35 (2017).

The probable cause to arrest justified extension of the encounter between Corporal

Keltner and Defendant. Corporal Keltner merely asked for consent to do that which

by law he was authorized to do: conduct a search of Defendant’s person.

 “An officer may conduct a warrantless search incident to a lawful arrest. A

search is considered incident to arrest even if conducted prior to formal arrest if

probable cause to arrest exists prior to the search and the evidence seized is not

necessary to establish that probable cause.” Robinson, 221 N.C. App. at 276, 727

S.E.2d at 719 (purgandum).

 If an officer has probable cause to arrest a suspect and as
 incident to that arrest would be entitled to make a
 reasonable search of his person, we see no value in a rule
 which invalidates the search merely because it precedes
 actual arrest. The justification for the search incident to
 arrest is the need for immediate action to protect the
 arresting officer from the use of weapons and to prevent
 destruction of evidence of the crime. These considerations
 are rendered no less important by the postponement of the
 arrest.

State v. Wooten, 34 N.C. App. 85, 89-90, 237 S.E.2d 301, 305 (1977).

 In the present case, because an independent basis for probable cause existed

prior to the search of Defendant’s person and because the independent basis was

 - 11 -
 STATE V. JACKSON

 Opinion of the Court

separate and apart from discovery of the cocaine, the cocaine found on Defendant’s

person was unnecessary to establish probable cause for arrest.

 Moreover, Corporal Keltner testified that prior to asking Defendant for consent

to search his person, he believed that Defendant was engaging in some sort of

criminal activity other than just running a red light or impaired driving, or driving

without a valid operator’s license. Corporal Keltner testified that:

 a lot of times individuals that are involved in some sort of
 criminal activity or have some type of contraband in their
 car will commonly do what we refer to in highway
 interdiction as white line the officer whenever they
 stopped, because a lot of officers traditionally will make
 their approach to the vehicle on the driver’s side of the
 vehicle, and by pulling over there on the fog line, would
 expose the officer to danger, walking up in the travel lane
 and sometimes force the officer to change the way he does
 the traffic stop, or just go ahead and hurry them on their
 way just to get out of that danger . . .

 [W]hen [Defendant] handed me his Pennsylvania . . . I.D.
 card, that his left -- or his right hand, rather, was shaking
 uncontrollably whenever he handed the license to me. I
 know, based on my training and experience, that
 individuals that are involved in criminal activity commonly
 will shake uncontrollably like that whenever they hand me
 their documentation that I have asked for in a traffic stop.
 ...

 When he was sitting in the back of my patrol vehicle, just
 the spontaneous conversation that he initiated with me in
 regards to an event that had transpired prior to me
 stopping him and this individual that was involved in the -
 - the incident just seemed very strange to me that he’s
 providing me with information that I hadn’t asked for. And
 I noticed also that when he was talking to me that he was

 - 12 -
 STATE V. JACKSON

 Opinion of the Court

 talking very, very rapidly. And I know both of these things,
 based on my training and experience, are things that are
 indications of people who are involved in criminal
 activities, are excessively nervous. . . .

 When I ran the registration, it was a North Carolina
 license plate that was displayed on this vehicle, I found
 that the vehicle was registered to a third-party female who
 was not present in the vehicle. And I know, based on my
 training and experience that very commonly individuals
 that are involved in criminal activities will . . . utilize a
 vehicle that’s registered to a third party.

 Thus, even though the trial court concluded that the traffic stop ended after

the sobriety tests, Corporal Keltner developed probable cause to arrest Defendant

and then to search Defendant’s person. Because the search of Defendant’s person

was incident to a lawful arrest, the trial court’s ruling on Defendant’s motion to

suppress was proper.

III. Consent

 Defendant also contends his consent to the search was invalid because

Corporal Keltner had not yet returned his car keys and I.D. card, and thus Defendant

was not free to leave. Defendant relies on State v. Jackson, 199 N.C. App. 236, 681

S.E.2d 492 (2009), which held that a defendant’s consent to search is invalid when it

is tainted by the illegality of an extended detention.

 Under the search incident to arrest exception, consent to search is not required

because “[a]n officer may conduct a warrantless search incident to a lawful arrest.”

State v. Chadwick, 149 N.C. App. 200, 205, 560 S.E.2d 207, 211 (2002) (citations

 - 13 -
 STATE V. JACKSON

 Opinion of the Court

omitted). “A search incident to lawful arrest is limited in scope to the area from which

the arrested person might have obtained a weapon or some item that could have been

used as evidence against him. The parameters of search incident to arrest in a given

case depend upon the particular facts and circumstances.” State v. Jones, 221 N.C.

App. 236, 240, 725 S.E.2d 910, 913 (2012) (citation omitted).

 Because probable cause existed, Defendant’s consent was unnecessary for

Corporal Keltner to conduct the search. No additional justification is needed beyond

the probable cause required for the arrest. Additionally, the scope of the search was

limited. Corporal Keltner conducted an outer clothing pat-down of Defendant’s

person. As a result of the pat-down, Corporal Keltner located powder cocaine and

crack cocaine in Defendant’s jeans. Once Corporal Keltner secured the cocaine he

placed Defendant under arrest and concluded the search of Defendant’s person.

Thus, because Corporal Keltner had probable cause to arrest, Defendant’s consent

was not required to conduct a search incident to lawful arrest.

IV. Inevitable Discovery

 Defendant further argues the trial court erred in alternatively concluding that

discovery of the cocaine was inevitable. Even if we assume the search of Defendant

was unlawful, which it was not, discovery of the illegal contraband on Defendant’s

person was inevitable.

 - 14 -
 STATE V. JACKSON

 Opinion of the Court

 “The standard of review for alleged violations of constitutional rights is de

novo.” State v. Graham, 200 N.C. App. 204, 214, 683 S.E.2d 437, 444 (2009). Under

the exclusionary rule, evidence obtained by unreasonable search and seizure is

generally inadmissible in a criminal prosecution. State v. Garner, 331 N.C. 491, 505-

06, 417 S.E.2d 502, 510 (1992).

 However, “[u]nder the inevitable discovery doctrine, evidence which is illegally

obtained can still be admitted into evidence as an exception to the exclusionary rule

when the information ultimately or inevitably would have been discovered by lawful

means. . . . Under this doctrine, the prosecution has the burden of proving that the

evidence, even though obtained through an illegal search, would have been discovered

anyway by independent lawful means.” State v. Harris, 157 N.C. App. 647, 654, 580

S.E.2d 63, 67 (2003) (purgandum). “The State need not prove an ongoing independent

investigation; we use a flexible case-by-case approach in determining inevitability.”

State v. Larkin, 237 N.C. App. 335, 343, 764 S.E.2d 681, 687 (2014) (citation omitted).

Moreover, “if the State carries its burden and proves inevitable discovery by separate,

independent means, thus leaving the State in no better and no worse position, any

question of good faith, bad faith, mistake or inadvertence is simply irrelevant.”

Garner, 331 N.C. at 508, 417 S.E.2d at 511.

 In the present case, Corporal Keltner testified that had he merely issued

Defendant a citation for driving with no operator’s license, he “would [not] have

 - 15 -
 STATE V. JACKSON

 Opinion of the Court

allowed the [D]efendant to have driven off” from the traffic stop because “he was not

licensed to operate a motor vehicle.” Corporal Keltner further testified that he would

have searched Defendant before giving him a ride or transporting him to jail because

of his practice of searching everyone he transports in his patrol car. Also, Defendant

repeatedly asked Corporal Keltner “if [h]e could give him a ride back over to the Green

Valley Motel and drop him off.”

 Here, the State established by a preponderance of the evidence that the cocaine

would have been inevitably discovered because Corporal Keltner would have

searched Defendant’s person for weapons or contraband prior to transporting him to

another location or jail.

 Conclusion

 For the reasons stated above, the trial court properly denied Defendant’s

motion to suppress.

 AFFIRMED.

 Judges DIETZ and TYSON concur.

 - 16 -